LEE HOUSEKEEPER et al., Appellants, *v.* MILES J. LOURIE, Respondent.

First Department, June 27, 1972.

*Maurice A. Reichman* for appellants.

*Martin E. Silfen* for respondent.

EAGER, J. The petitioners appeal from an " order " (having the effect of a judgment) denying their application to stay arbitration and directing arbitration pursuant to the demand of respondent.

The petitioners are engaged in the business of managing musical entertainers and other artistic performers and the respondent is an attorney engaged in the practice of law. The parties, on October 1, 1969, agreed " to participate as partners in connection with our various business ventures with members of the group known as ' Dreams ' ''. In March of 1970, following disagreements among the parties with respect to partnership affairs, they entered into certain agreements for the termination of the partnership. By written agreement, dated April 1, 1970, the petitioners confirmed the understanding that the partnership agreement was terminated. In addition to providing therein for the payment to respondent by petitioners of certain portions of commissions or shares earned by petitioners from the performances of the artists " Dreams ", the agreement provided that the petitioners would indemnify the respondent against any expenses and reasonable attorney's fees incurred in connection with any matter relating to " Dreams ", and also provided for payment by them of certain legal fees and disbursements.

The agreement of April 1, 1970 contained a clause broadly providing for the arbitration of " any controversy or claim arising out of or relating to this contract or the subject matter hereof or the breach hereof ''. Pursuant to this clause, the respondent served a demand for arbitration of the dispute concerning " payment of management commissions or shares of income and legal fees as required by * * * the contract dated April 1, 1970. Specific performance of the contractual obligations assumed by respondents."

In their application to stay arbitration, the petitioners allege that they were induced to enter into the agreement for the

termination of the partnership by fraudulent representations of the respondent attorney that such an agreement was the only form by which the partnership could be terminated; that the petitioners were incorrectly told that they had to sign said agreement or the partnership would continue; that the petitioners were then the clients of the respondent; and that pursuant to an attorney-client and fiduciary relationship, the respondent owed them a high degree of loyalty which was breached by his fraudulent representations.

Special Term, broadly holding that, "the issue of fraudulent inducement is a matter to be determined by the arbitrator under the law of New York", denied petitioners' application to stay arbitration. The appeal by petitioners thus presents us with the troublesome question of whether the alleged fraud in the inducement is arbitrable. The question frequently arises and a review of relevant decisions and a reference to settled general rules may be helpful.

Certainly, the parties may agree in writing to arbitrate issues concerning misrepresentation and fraud relating to a contract. Fraud inducing a contract containing an arbitration clause does not vitiate the contract; it merely constitutes a ground for avoiding the contract. If issues with regard to alleged fraud or misrepresentation are within the scope of an arbitration clause and the clause itself is not rendered invalid or voidable by reason of the alleged fraud or misrepresentation, the issues are to be submitted to and determined by the arbitrators. (See, e.g., *Matter of Coler* v. *GCA Corp.*, 39 A D 2d 656; *Matter of Amphenol Corp.* [*Microlab*], 49 Misc 2d 46, affd. 25 A D 2d 497; *Matter of Kellogg Co.* [*Monsanto Chem. Co.*], 9 A D 2d 744; *Matter of Fabrex Corp.* [*Winard Sales Co.*], 23 Misc 2d 26; *Hamilton Life Ins. Co. of N. Y.* v. *Republic Nat. Life Ins. Co.*, 408 F. 2d 606, 610–611.) Generally, therefore, fraud in the performance of a contract is arbitrable under a broad arbitration clause contained in the contract.

Also, where a party has confirmed or stands upon the validity of a contract containing an arbitration clause, he may not resist arbitration of a claim of fraud embraced by the clause. (See, e.g., *Matter of Coler* v. *GCA Corp.*, *supra.*) It follows that, where a party to a contract containing an arbitration agreement or clause, with knowledge of alleged fraud or misrepresentation affecting the contract, affirms the validity of the contract by accepting the benefit of a material provision thereof or by taking or participating in an action or proceed-

ing to enforce a claim or right existing by virtue of the contract, he is precluded from avoiding the arbitration agreement or clause on the basis of the alleged fraud or misrepresentation. (See, e.g., *Matter of Amphenol Corp.* [*Microlab*], *supra*; *Milton L. Ehrlich, Inc.* v. *Swiss Constr. Corp.*, 11 A D 2d 644; *Matter of Amerotron Corp.* [*Shapiro Woolen Co.*], 3 A D 2d 899, affd. 4 N Y 2d 722; *Horowitz* v. *Alley Pond Park Apts. No. 1*, 2 A D 2d 762, 763.)

Always, however, we are to bear in mind that, in contractual arbitration, the jurisdiction and powers of the arbitrators depend upon a binding agreement for arbitration of the matter in dispute. As stated by SCILEPPI, J., in *Matter of Howard & Co.* v. *Daley* (27 N Y 2d 285, 289), '' arbitration is essentially a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit (see *Matter of Riverdale Fabrics Corp.* [*Tillinghast-Stiles Co.*], [306 N. Y. 288], 291; *Matter of ITT Avis* v. *Tuttle*, [27 N Y 2d] 571).''

The right to demand and compel arbitration of a controversy or dispute presupposes the existence of a valid and enforceable agreement for arbitration and challenge in court may be made to the existence of such an agreement. (See *Matter of Kramer & Uchitelle*, 288 N. Y. 467, 471.) Where the existence or validity of an arbitration agreement itself is timely raised by a party seeking a stay of arbitration or opposing an application to compel arbitration, issues relating to the validity of the contract must be determined by the court. (See CPLR 7503.) '' The language in CPLR * * * makes explicit that the preliminary question for the court is whether there is a substantial question of the existence of a ' valid agreement ' to arbitrate. If the statute intended the meaning normally attributed to those words there is no question that a preliminary question for the court to determine is whether or not there is a valid arbitration agreement in the first instance.'' (*Durst* v. *Abrash*, 22 A D 2d 39, 41, affd. on opn. of BREITEL, J. below 17 N Y 2d 445. See, also, *Matter of Wrap-Vertiser Corp.* [*Plotnick*], 3 N Y 2d 17; *Matter of Gruen* v. *Carter*, 173 Misc. 765, 766, affd. 259 App. Div. 712.)

Accordingly, if the arbitration agreement itself is voidable for fraud in the inducement, the binding effect of the agreement may be properly raised by the defrauded party. The Court of Appeals (FULD, now Ch. J.) has generally held that '' where fraud or duress, practiced against one of the parties, renders the [arbitration] agreement voidable '', a court will enjoin arbitration. (*Matter of Exercycle Corp.* [*Maratta*], 9

N Y 2d 329, 334. See, also, *Matter of Wrap-Vertiser Corp.* [*Plotnick*], *supra*; *Matter of Aqua Mfg. Co.* [*Warshow & Sons*], 179 Misc. 949, affd. 266 App. Div. 718; *Matter of Manufacturers Chem. Co.* v. *Caswell, Strauss & Co.*, 259 App. Div. 321, app. dsmd. 283 N. Y. 679.) Although, in 1962, the Legislature changed the wording of the arbitration statute so as to state that the court is vested with the power to consider whether "a valid agreement [to arbitrate] was made" (CPLR 7503) in lieu of the prior wording submitting to the jurisdiction of the court the power to determine whether there was a "substantial issue as to the making of the contract" (see former Civ. Prac. Act, § 1450), the change in wording may not be given the effect of abrogating the general rule that a party may not be compelled to arbitrate a matter where his agreement to arbitrate is not enforceable as against him. Certainly, where a party denies ever having validly agreed to anything, including arbitration, the right to arbitration, if properly raised, must be settled before arbitration can be directed. As FROESSEL, J., stated in his concurring opinion in the *Exercycle Corp.* case: "Simply put, the legal existence of the arbitral tribunal depends on contract. It is from that agreement between the parties that their very being, or jurisdiction and power to act, derives. Unless such contract, when seasonably challenged, is declared valid and enforcible, therefore, the arbitral tribunal can never legally come into being." (*Matter of Exercycle Corp.* [*Maratta*], *supra*, p. 339).

It is true that, in the consideration of whether fraud in the inducement is arbitrable under a broad arbitration clause, a proper inquiry may be whether the clause constitutes a separable and enforceable part of the principal contract between the parties. The separability rule is broadly followed in the Federal courts. (See *Prima Paint* v. *Flood & Conklin*, 388 U. S. 395; *Lawrence Co.* v. *Devonshire Fabrics*, 271 F. 2d 402, cert. dsmd. 364 U. S. 801; *Lummus Co.* v. *Commonwealth Oil Refining Co.*, 280 F. 2d 915, 930.) Noting that the Federal Arbitration Act "contemplates a distinction between the entire contract between the parties and the arbitration clause", the Federal rule, as established by the decisions, is clarified as follows: "While it is true that fraud or illegality in the inducement of the arbitration clause *itself* is a defense to enforcement of arbitration, the illegality, fraudulent inducement, or repudiation of the principal contract does *not* operate to nullify an agreement to arbitrate" (*Hamilton Life Ins. Co. of N. Y.* v. *Republic Nat. Life Ins. Co.*, 408 F. 2d 606, 610, *supra*). There is authoritative reasoning for the adoption of

the Federal separability rule in New York. (See Aksen, "Prima Paint v. Flood & Conklin — What Does It Mean?", 43 St. John's L. Rev. 1, July, 1968.) Nevertheless, it is clear that even fraud in the procurement of an arbitration contract itself, "like fraud in the procurement of any contract, makes it void and unenforceable and that this question of fraud is a judicial one which must be determined by a court. To allow this question to be decided by arbitrators would be to that extent to enforce the arbitration agreement even though steeped in the grossest kind of fraud" (*Moseley* v. *Electronic Facilities* [concurring opn. of BLACK, J.], 374 U. S. 167, 172).

In the present case, the petitioners' allegations show fraud permeating the entire agreement of April 1, 1970. It may not be held as a matter of law that this agreement resulted from "arm's length negotiations" rendering applicable an assumption that, notwithstanding the alleged fraud, the dominant intention of the parties was to settle their disputes by arbitration. (See *Prima Paint* v. *Flood & Conklin, supra,* pp. 402, n. 9, 403; 43 St. John's L. Rev., *supra,* p. 12.) If the allegations of the petitioners are true, then the entire agreement, including the provisions for arbitration, should be avoided as constituting a fraudulent breach of the fiduciary relationship between an attorney and his clients.

Where, as here, there is a prima facie showing of an issue as to whether there exists a valid and binding agreement for arbitration and such issue is timely and properly raised, it is to be determined by the court. The issues are to be forthwith tried (CPLR 7503) and if relevant issues of fact are raised, a hearing is required to afford the parties an opportunity to present evidence and to examine and cross-examine witnesses. (See *Matter of Princeton Rayon Corp. [Gayley Mill Corp.],* 309 N. Y. 13, 14; *Matter of Fineman [Korman],* 282 App. Div. 937; *Matter of Public Affairs Committee [Dist. 65, Retail, Wholesale & Dept. Store Union AFL-CIO],* 15 A D 2d 645.)

Because the respondent, objecting to the sufficiency of the petition as a matter of law, did not deny the allegations of fraud, he should be given an opportunity to serve an answer to the petition and thereupon the court should forthwith hold a hearing on issues of fact, if any are raised. The "order" (GOMEZ, J.), entered in Supreme Court, New York County, on December 22, 1971, should be reversed, on the law, with costs and disbursements to the petitioners-appellants, and the matter remanded to Special Term for hearing and determina-

tion in accordance herewith, with leave to respondent, within 10 days from entry of order hereon, to serve an answer to the petition. Settle order on notice.

MARKEWICH, J. P., MURPHY, MCNALLY and TILZER, JJ., concur.

Judgment, Supreme Court, New York County, entered on December 22, 1971, unanimously reversed, on the law, and the matter remanded to Special Term for hearing and determination in accordance with the opinion of this court filed herein, with leave to respondent, within 10 days from entry of the order to be settled hereon, to serve an answer to the petition.

Settle order on notice.