ABERTHAW CONSTRUCTION COM-
PANY, Petitioner,

v.

CENTRE COUNTY HOSPITAL,
Respondent.

Civ. No. 73–399.

United States District Court,
M. D. Pennsylvania.

Dec. 6, 1973.

Kenneth M. Cushman, Howard D. Venzie, Jr., Philadelphia, Pa., for petitioner.

William W. Litke, Bellefonte, Pa., for respondent.

OPINION

MUIR, District Judge.

This is a diversity action seeking to compel arbitration under the United States Arbitration Act of 1925, 9 U.S.C.

§ 1 et seq. The parties have briefed their positions and, there being no dispute as to the facts, the petition is ripe for decision.

On May 14, 1969, Petitioner entered into a contract with Respondent to perform general construction work on a new hospital. Paragraph 7 of the contract provides that "all disputes arising in connection with this contract shall be submitted to arbitration . . . ."

Respondent and Lawrie and Green, the project architects, executed a Certificate of Substantial Completion on July 18, 1972. By letter dated October 3, 1972, Petitioner made a formal demand upon the Respondent for the following amounts: $212,763.34 as the amount of money due Petitioner under the contract and being held by Respondent as "retainages"; $17,561.10 as change estimates not yet processed into formal change orders; $520,126.00 as "Delay-Impact claim including increased labor, costs, material costs, health, welfare and taxes, overhead, loss of subcontractors, loss of profit, cash flow disruption and loss of bonding capacity." A copy of this letter was sent to the architects, and, on October 12, 1972, Respondent notified Petitioner that the demands contained in the October 3 letter had been referred to the architects. Apparently this was done because of the provisions in ¶ 6 of the contract which gives responsibility for contract interpretation in the first instance to the architects.[1] The architects did not issue a written decision within 10 days, but rather, by letter to Petitioner dated November 9, 1972, requested more information on Petitioner's delay claim. There is no indication in the record that this requested information was furnished to the architects. On November 22, 1972, Petitioner filed a Demand for Arbitration with the American Arbitration Association concerning the claims as outlined in the October 3, 1972 letter to Respondents. By letter dated January 3, 1973, Respondents made it clear that they intended to resist any attempt to arbitrate Petitioner's claims for alleged delays caused by the Respondent. As of this date, Respondent has refused to arbitrate Petitioner's claims.

 Respondent takes the position that Petitioner's claim for delay damages is not an arbitrable issue. On the face of it, Petitioner's claim would appear to fall within the near limitless boundaries of the arbitration clause which calls for arbitration in "all disputes arising in connection with this contract." Respondent cites Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc., 109 Ill.App. 2d 224, 248 N.E.2d 289 which held that a claim for delay damages was beyond the scope of an arbitration clause identical to the clause in the case sub judice. However, that holding was an application of Illinois law under the Illinois Uniform Arbitration Act. In cases arising under the United States Arbitration Act of 1925, federal courts apply federal substantive law. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Federal substantive law requires that an agreement to arbitrate be liberally construed in favor of arbitration. Lundgren v. Freeman, 307 F.2d 104 (9th Cir. 1962); Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382 (2d Cir. 1961), cert. denied, 368 U.S. 817, 82 S. Ct. 31, 7 L.Ed.2d 24. The federal poli-

---

1. ¶6 of the contract provides:

(a) It shall be the responsibility of the Architect to make written decisions in regard to all claims of the Owner or Contractor and to interpret the Contract Documents on all questions arising in connection with the execution of the work.

(b) Except as otherwise specified, all the Architect's decisions on interpretations of contract requirements are subject to arbitration.

(c) If the Architect fails to make a written decision or written interpretation of the contract requirements on any question within ten days after written request for same by either party to the contract, either party may then demand arbitration, in which event later decision by the Architect shall not stop the arbitration proceedings except with the mutual consent of both parties to the contract.

cy favoring arbitration was perhaps best stated by the Supreme Court in a case brought under § 301 of the Labor Management Relations Act, United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960):

> "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

■ Respondent cites cases for the proposition that an owner is not liable to a contractor for delay damages where, as here, the contract provides for an extension of time to the contractor for the completion of his contract, and where the contract provides that final payment shall be payable only when the contractor executes a complete release of all claims against the owner and submits the same to the architect. This argument goes to the substance of Petitioner's claim, not to the issue of whether the claim is arbitrable. The function of this Court is to determine whether the issue involved is one which the parties agreed to arbitrate, not to consider the merits of the controversy as to which arbitration is sought. International Union of Electrical, Radio and Machine Workers v. Westinghouse Electric Corp., 48 F.R.D. 298 (S.D.N.Y.1969). See United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960), where, in a parallel situation, the Supreme Court stated:

> "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious."

■■ Respondent next contends that arbitration may only be had with respect to the matters set forth in paragraphs 5 and 6 of the contract,[2] and only after the matter has properly been referred to the architect under ¶ 6. The simple answer to the first part of this contention is that the arbitration clause refers to "all disputes arising in connection with this contract," and does not limit arbitrable issues to those set forth in paragraphs 5 and 6. As to Respondent's "exhaustion of remedies" argument, the contract does not specifically make submission of the claim to the architect a condition precedent to arbitration. Even if it were assumed that it be a condition precedent, it appears that the matter was referred to the architect and no written decision was issued within 10 days. Therefore, under ¶ 6 of the contract, the matter became arbitrable at that time. The contract imposed no duty upon Petitioner to respond to the architect's subsequent request for clarification of the claim. If trade custom demands a different interpretation of the arbitration clause of the contract, the issue should be submitted to the arbitrator for decision.

■ Finally, Respondent argues that the work has been completed, and that the arbitration clause contemplates arbitration only during performance of the contract, not after the contract has been terminated by complete performance or breach. The relevant portions of the arbitration clause, paragraphs 7 (b) and (c), state:

> "7(b) The work under this contract shall not be stopped or delayed in any way during the arbitration proceedings . . . .
>
> "7(c) . . . Any demand for arbitration shall be made within thirty days after the dispute has arisen if practicable, but, in any event, no demand for arbitration shall be made after the date of final payment . . . ."

It is clear that under federal substantive law, a breach of the contract does

---

**2.** ¶5 relates to the architect's authority over all questions "in connection with the work." ¶6 is quoted in full in footnote 1.

not render unarbitrable the dispute giving rise to the breach. Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978, 988 (2d Cir. 1942). See Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 410 (2d Cir. 1959). However, the Court of Appeals for this circuit, applying Pennsylvania law to a case involving an arbitration clause similar to the one in this case, held that there was no right to arbitrate a dispute after the work had been completed and after the time for final payment had passed. Hussey Metal Division v. Lectromelt Furnace Division, 471 F.2d 556 (3d Cir. 1972). Even assuming that federal law is the same as Pennsylvania law in cases involving "work stoppage" and "final payment" clauses, *Hussey*, in my view, is inapplicable to the facts in the case at bar. Paragraphs 28(e), (f), and (g)[3] of the contract in question provide that upon completion and acceptance of all work and delivery of a complete release of all claims against the owner by the contractor, the architect must file a certificate of completion. Final payment becomes due thirty days after the filing of such certificate. In this case, there has been no release and no certificate of completion, and therefore the date of final payment has not yet been established. The reason, of course, is because the amount of final payment is the matter in dispute here. In Westmoreland Hospital Association v. Westmoreland Construction Co., 423 Pa. 255, 223 A.2d 681 (1966) upon which the *Hussey* court relied, the Supreme Court of Pennsylvania, on facts remarkably similar to case sub judice, held that the contractor's delay claim was not subject to arbitration because the contract had been completed and the contractor had accepted final payment. There has been no such finality in the present case.

For the foregoing reasons, the Court concludes that the disputes in question are "disputes arising in connection with this contract" within the meaning of the arbitration clause. An Order directing the parties to proceed with arbitration will be entered.

---

. 3. Paragraphs 28(e), (f), and (g) read as follows:

"(e) *Release of Claims.*—Neither the Final Payment nor any part of the retained percentage shall become due until the Contractor shall deliver to the Owner through the Architect a complete release of all claims against the Owner arising under and by virtue of this contract, including claims of all subcontractors and suppliers of either materials or labor, other than such claims, if any, as may be specifically excepted by the Contractor."

"(f) *Certificate of Completion.*—Upon completion and acceptance of all work whatsoever required, and the release of all claims against the Owner as specified, the Architect shall file a written certificate with the Owner and with the Contractor as to the entire amount of work performed and compensation earned by the Contractor, including extra work and compensation therefor."

"(g) *Final Payment.*—Within thirty (30) days after the filing of such certificate of completion, the Owner shall pay to the Contractor the amount therein stated, less all prior payments and advances whatsoever to or for the account of the Contractor. All prior estimates and payments including those relating to extra work shall be subject to correction by this payment, which is throughout this Contract called Final Payment."