COMPREHENSIVE MERCHANDIS-
ING CATALOGS, INC., a New York
Corporation, Plaintiff-Appellee,

v.

MADISON SALES CORP., an Illinois
Corporation, Defendant-Appellant.

No. 75–1037.

United States Court of Appeals,
Seventh Circuit.

Argued May 19, 1975.

Decided Aug. 20, 1975.

Harold A. Liebenson, Chicago, Ill., for defendant-appellant.

Daniel A. Costigan, Chicago, Ill., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, BAUER, Circuit Judge, and EAST *, Senior District Judge.

CASTLE, Senior Circuit Judge.

Plaintiff Comprehensive Merchandising Catalogs, Inc., a New York corporation, brought a diversity action in the district court to enforce a default judgment for $10,302.47 obtained against

* Senior District Judge William G. East of the District of Oregon is sitting by designation.

the defendant Madison Sales Corporation, an Illinois corporation, in the Supreme Court of the State of New York. The defendant moved to enjoin enforcement of that judgment, contending that the New York court's judgment was void for lack of personal jurisdiction and therefore was not entitled to full faith and credit under Article IV, § 1 of the Constitution and its supporting legislation, 28 U.S.C. § 1738.[1] The district court concluded that the New York court did have jurisdiction over the defendant, and ordered enforcement of the judgment. We affirm, although for reasons different from those relied on by the district court.

## I.

The controversy stems from a purchase order form used by customers to purchase catalogs from the plaintiff. The purchase order form sets forth the price of each catalog depending on the number of catalogs ordered, and provides a space to indicate the number of catalogs desired. The purchase order form, dated January 20, 1971, was signed by the defendant's Vice-President, Jack Perlstein, but the space for indicating the quantity of catalogs needed was left blank.

The purchase order form also contains paragraphs numbered from one to eighteen and grouped under the heading "Conditions Covering All Orders." Two of the paragraphs are relevant to this dispute. Paragraph 10.A. provides:

Any controversy or claim arising or relating to this contract or the breach thereof, (or in connection with other work or services utilizing materials produced or used in the performance of the contract), shall be settled by arbitration, in accordance with the rules then obtaining of the American Arbitration Association, and judgement [sic] upon the award rendered may be entered in an appropriate court of the forum, state or federal, having jurisdiction. The arbitration hearing shall be held at the main office of the American Arbitration Association in Manhattan, City and State of New York.

Paragraph 10.B. provides:

In any legal proceeding relating to this arbitration, including (but not limited to) proceeding to institute the said arbitration or to confirm, vacate or modify the arbitration award or to appeal an order or judgment relating thereto, the parties waive personal service and agree that in such case personal service may be made by registered or certified mail directed to either party at its address herein set forth or to any later address known to the other. In such case, said proceeding shall be returnable at least thirty days (but not more than forty days except by agreement of the parties) after the mailing of the papers instituting said proceeding and should the party so served fail to answer or respond to said proceeding in the time limited and set forth in said papers, it shall be deemed to be in default. If, however, the party instituting said legal proceedings relating to said arbitration chooses to make service in the manner provided by the Civil Practice Law and Rules of the State of New York, the time limited in said Civil Practice Law and Rules as to the return date of said proceeding, shall prevail.

In March 1971, the defendant denied that it had ordered or authorized the purchase of any catalogs, and the plaintiff consequently instituted arbitration proceedings in New York. The defendant apparently received proper notice of the demand for arbitration, but did not

---

**1.** The contention that a state court judgment is void may be asserted in any proceeding where the validity of the judgment is put in issue. Thus, contrary to plaintiff's argument, we do not see how that challenge is in any way diminished by the fact that the defendant may have improperly labeled the motion attacking the state court judgment as one arising under Fed.R.Civ.P. 60(b). *See* 7 Moore's Federal Practice ¶ 60.41[1], [2], at 802–803 (2d ed. 1974).

appear at the hearing. An award was entered by the arbitrator in favor of the plaintiff. In accordance with paragraph 10.B., the plaintiff then sent to the defendant by certified mail notice of the New York court proceeding to confirm the award, but the letter was returned to the plaintiff marked "refused." The defendant did not appear at the New York Supreme Court proceeding to confirm the arbitrator's award, and a default judgment was entered in favor of the plaintiff.

## II.

■■ It is well-settled that parties to a contract may agree to submit to the jurisdiction of a particular court and may also agree as to the manner and method of notice.[2] *D. H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 185, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); *National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 315–316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); *Gilbert v. Burnstine,* 255 N.Y. 348, 174 N.E. 706 (1931). In this case, the personal jurisdiction of the New York court depends upon paragraphs 10.A. and 10.B. of the contract.[3] There is no contention that the plaintiff did not comply with those provisions.

■ It is also well-established, however, that a state court judgment is not entitled to full faith and credit in a second forum if that judgment was rendered without jurisdiction over either the person or the subject matter, and whether there was such jurisdiction is open to inquiry in the second forum. *Milliken v. Meyer,* 311 U.S. 457, 462, 61 S.Ct. 339, 85 L.Ed. 278 (1940). Arguing

from the premise that personal jurisdiction over it depends upon validity of the entire contract, the defendant contends that we are therefore required to ascertain the validity of that contract in order to determine whether the New York court had jurisdiction. In essence, the defendant argues that the question of personal jurisdiction merges into an evaluation of the merits of the validity of the contract. The defendant asserts that the whole contract is invalid because an essential term, the quantity of catalogs desired, was not supplied.

■ We do not think it is permissible, however, to determine the effect of the omission of the quantity term because we are of the opinion that under New York law the jurisdictional provisions of the contract are unaffected by this claim of contract invalidity. We think this result follows from consideration of the issue of separability of arbitration clauses from the contract in which they are contained.

The issue of separability generally arises in the situation where, pursuant to a contract containing an arbitration clause, a party moves to either compel or stay arbitration. Usually, the party opposing arbitration has argued that the entire contract was procured by fraudulent inducement, and that therefore the court must decide the issue of fraudulent inducement before the arbitration clause is considered applicable. In *Matter of Weinrott (Carp),* 32 N.Y.2d 190, 344 N.Y. S.2d 848, 298 N.E.2d 42 (1973), the New York Court of Appeals, in re-examining its own position on that matter, considered the developed case law, and rejected that argument. The court con-

2. We regard the paragraphs covering arbitration and the method for obtaining judgment on the arbitrator's award as the jurisdictional and notice provisions.

3. The contract was to be performed in New York, but it was not determined where the contract was signed, although Vice-President Perlstein was in New York on January 20, 1971, the date of the contract. Without determining whether these facts alone would be sufficient to subject the defendant to New

York's long-arm statute, 7B N.Y.Civ.Prac. § 302 (McKinney 1972), it is clear that apart from the contract, the method of notice utilized would not be adequate under N.Y.Civ. Prac. § 313. The type of notice provided under the contract is permissible, however, under New York law. *Gilbert v. Burnstine, supra; National Equipment Rental, Ltd. v. Dec-Wood Corp.,* 51 Misc.2d 999, 274 N.Y.S.2d 280 (1966).

cluded that the arbitration clause [4] survived the claim of contract invalidity asserted. Since the court's reasoning is applicable here, we quote at some length:

> The theoretical underpinning of the *Wrap-Vertiser [Matter of Wrap-Vertiser Corp.,* 3 N.Y.2d 17, 163 N.Y.S.2d 639, 143 N.E.2d 366 (1957)] approach can be found in the assertion that one fraud is fraud to all. There is a long line of New York cases holding that an arbitration agreement was generally not separable from the principal contract . . . and, therefore, if the substantive provisions of the contract were to fall, the entire contract including an arbitration clause would also fall.

> \*   \*   \*   \*   \*   \*

> A contrary view was taken by the seminal case of *Lawrence Co. v. Devonshire Fabrics* (271 F.2d 402 [2d Cir.], *supra*) which held that an arbitration clause is separable from the balance of the contract. (See, also, *Lummus Co. v. Commonwealth Oil Refining Co.,* 280 F.2d 915, 925 [1 Cir.].) The cases holding that the arbitration clause is separable assert that the fraud must go to the arbitration provision itself in order to avoid submission to arbitration. (*Hamilton Life Ins. Co. of N. Y. v. Republic Nat. Life Ins. Co.,* 408 F.2d 606, 610 [2d Cir.].) Of course, if the alleged fraud was part of a grand scheme that permeated the entire contract, including the arbitration provision, the arbitration provision should fall with the rest of the contract. (See *Moseley v. Electronic, etc., Facilities,* 374 U.S. 167, 83 S.Ct. 1815, 10 L.Ed.2d 818; *Housekeeper v. Lourie,* 39 A.D.2d 280, 333 N.Y.S.2d 932, *supra*.)

> The technical argument about separability or nonseparability has often obscured the main goal of the court's inquiry which is to discern the parties' intent. (See, generally, 43 St.John's L.Rev. 1.) When the parties to a contract have reposed in arbitrators all questions concerning the "validity, interpretation or enforcement" of their agreement, they have selected their tribunal and no doubt they intend it to determine the contract's "validity" should the necessity arise. Judicial intervention based upon a nonseparability contract theory in arbitration matters prolongs litigation, and defeats, as this case conclusively demonstrates, two of arbitration's primary virtues, speed and finality (see *Amicizia Societa Nav. v. Chilean Nitrate & Iodine Sales Corp.,* 274 F.2d 805, 808 [2 Cir.], cert. den. 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727).

> \*   \*   \*   \*   \*   \*

> . . . Since we now hold that an arbitration provision of a contract is separable, the agreement to arbitrate would be "valid" even if the substantive portions of the contract were induced by fraud.

*Id.* at 197–198, 344 N.Y.S.2d at 854, 298 N.E.2d at 46–47 (footnote omitted). *See also Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

Consequently, we similarly believe that under the present circumstances paragraphs 10.A. and 10.B. are also independent of this assertion of contract invalidity, and therefore since these provisions establish the jurisdiction of the New York court, we cannot inquire into the effect of the quantity omission. Here, the defendant does not contend that Vice-President Perlstein's signature

---

4. The arbitration clause before the court provided:

    All disputes, controversies or claims arising hereunder, the interpretation of any of the provisions or the performance called for thereunder shall be settled by arbitration in New York, in accordance with the rules then obtaining of the American Arbitration Association and any decision arising therefrom may be entered as a judgment in any court of competent jurisdiction.
*Id.* at 196, 344 N.Y.S.2d at 853, 298 N.E.2d at 45.

was a forgery or that the signature or the contract was procured by fraud or duress. While § 2–201(1) of the Uniform Commercial Code, 62½ N.Y.U.C.C. § 2–201(1) (McKinney's Consol.Laws, c. 38 1964) requires a quantity term to render a contract enforceable, we do not think that omission of that term by itself indicates that there was no intention to enter into a contractual relationship, or that the signed contract simply represents preliminary negotiations. Clearly, the parties had some matter in mind when the contract was signed, and in the absence of other factors, we believe that the parties' freely chosen manner for resolving disputes relating to the contract should not be so easily vitiated by a matter which appears to be the very type of issue they agreed to resolve by a selected manner. The place to litigate the question of validity was in New York. *See Island Territory of Curacao v. Solitron Devices, Inc.,* 489 F.2d 1313, 1317 (2d Cir. 1973), *cert. denied* 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974).

*Interocean Shipping Co. v. National Shipping and Trading Corp.,* 462 F.2d 673 (2d Cir. 1972) and *A/S Custodia v. Lessin International, Inc.,* 503 F.2d 318 (2d Cir. 1974), do not suggest[5] that the substantive validity of the contract must be examined. In those cases, facts surrounding the formation and execution of the contracts enforcing arbitration clauses brought into question whether there was "a meeting of the minds" and therefore whether any contractual relationship existed at all. Thus, it was concluded that whether a contract existed must be resolved before there could be arbitration. As stated previously, however, we do not think that omission of the quantity term by itself evidences a similar absence of a contractual relationship.

Since we conclude that this claim of contract invalidity does not have any impact on the force of the jurisdictional and notice provisions, the New York court, by consent, had personal jurisdiction over the defendant. We are therefore precluded from inquiring into the merits of the validity of the contract, and the New York judgment is entitled to full faith and credit.

The judgment of the district court is Affirmed.

BAUER, Circuit Judge (dissenting).

I must respectfully dissent.

The majority opinion, it seems to me, does violence to some very fundamental concepts of contract law. While I am most willing to agree that "parties to a contract may agree to submit to the jurisdiction of a particular court and may also agree as to the method and manner of notice" as recited in the majority opinion, I am unwilling to agree that a signature on an "order form" without any indication as to what was ordered constitutes a "contract."

In order to arbitrate, or select a forum to try, issues arising from disagreements over a contract, I would suggest that there must be a contract. In its very simplest terms a contract has always been described as a "promise for a promise" or, even more elementary, "a meeting of the minds". The document relied upon in this case leaves to total imagination the number of catalogs to be delivered or paid for. It totally lacks the essential requisites for the existence of a contract. There is no possible way, by examining the document, that anyone can tell what performance is called for by either of the signing parties. Nor is there any document in existence in

---

5. Although apparently not required to do so by the Supreme Court's decision in *Prima Paint, supra, see* 388 U.S. at 424, 87 S.Ct. 1801 (Justice Black dissenting), the New York courts apply federal arbitration law to actions where a maritime transaction is involved. *Matter of A/S J. Ludwig Mowinckels Rederi,* 25 N.Y.2d 576, 307 N.Y.S.2d 660, 255 N.E.2d 774, *cert. denied* 398 U.S. 939, 90 S.Ct. 1844, 26 L.Ed.2d 272 (1970). The *Weinrott* decision interprets

*Rederi* as also holding that federal law applies in its courts where interestate commerce is involved. *Weinrott* itself brings New York law in accord with federal law even where interstate commerce or a maritime transaction is not present. *Weinrott, supra,* 32 N.Y.2d at 199 n.2, 344 N.Y.S.2d at 856 n.2, 298 N.E.2d at 48 n.2. The contract here evidences a transaction involving interstate commerce.

which the parties agree to buy or sell *any* particular quantity of catalogs.

The majority opinion discusses the "separability" of arbitration agreements and quotes at length from the *Matter of Weinrott,* 32 N.Y.2d 192, 344 N.Y.S.2d 848, 298 N.E.2d 42. It is interesting to note that *Weinrott* involves a defense of fraudulent inducement—a defense which admits a prima facie valid contract. In such a case, I agree that an arbitration agreement can be binding irrespective of the merits of the defense. In the instant case, the document relied on is not a contract in any sense and there is therefore nothing to arbitrate or adjudicate. The doctrine of separability has no application because there is nothing to separate. There is nothing required to be delivered, nothing required to be paid, and nothing to arbitrate. We need not inquire into the validity of the "contract"—there is no "contract".

The judgment of the district court should be reversed and the case dismissed.