[Civ. No. 38083. First Dist., Div. One. Feb. 10, 1977.]

EDITH E. MAIN, Plaintiff and Respondent, v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al.,
Defendants and Appellants.

**COUNSEL**

Orrick, Herrington, Rowley & Sutcliffe, W. Reece Bader and Laird H. Simons III for Defendants and Appellants.

Cullinan, Burns & Helmer, Vincent Cullinan and Robert C. Schubert for Plaintiff and Respondent.

**OPINION**

**MOLINARI, P. J.**—Defendant Merrill Lynch, Pierce, Fenner & Smith Inc. (Merrill Lynch), a stock brokerage firm, and its "account executive," defendant Jack Smith, had been engaging in interstate securities transactions for the account of a customer, plaintiff Edith Main. At defendant Smith's suggestion she signed a writing called a "Lending Agreement" which permitted Merrill Lynch to make discretionary sales and purchases of securities. The writing contained the following provision: "It is agreed that any controversy between us [plaintiff and Merrill Lynch] arising out of your business or this agreement, shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, . . ."

Thereafter plaintiff commenced the instant action against defendants Merrill Lynch and Smith. She alleged, among other things, that pursuant to the writing Merrill Lynch had made improvident purchases and sales for her account, resulting in losses and damages to her totaling $83,750. And she alleged that she was induced to sign the writing as a result of the "fraud" and "undue influence" of defendants.

Following service upon them of the complaint, defendants filed a petition in the superior court to compel arbitration. A hearing was held after which the court ordered that "defendants' petition to compel arbitration is denied." Defendants have appealed from that order.

I. The first contention of defendants is that the Federal Arbitration Act, title 9, sections 1-14, United States Code (Arbitration Act), was applicable to their petition to compel arbitration, "as a matter of federal substantive law."

The Arbitration Act is similar in many respects to the provisions of California's Code of Civil Procedure, part 3, title 9, entitled "Arbitration" (§§ 1280-1294.2). Each contemplates a special proceeding, affording a judicial remedy where a party to an agreement to arbitrate a dispute elects for one reason or another not to do so. Ordinarily it is an original judicial proceeding, but sometimes it will be brought by a party, as was done here, in the course of an existing action. The issue is usually whether there is a *valid* written agreement to arbitrate. If such an agreement is found to exist, arbitration will be ordered, and if the motion to compel arbitration is made in the course of an existing action the

action will be stayed. If no valid arbitration agreement is found, the requested relief will be denied and, if a related action on the basic agreement is pending, it will proceed to trial.

The Arbitration Act is applicable to a "written provision in . . . a contract evidencing a transaction involving [interstate] commerce . . . ." (See 9 U.S.C.A. § 2.) Plaintiff appears to concede that hers was such a transaction.

The Arbitration Act provides for a "trial," by jury if requested, of the issue whether a *valid* agreement to arbitrate the subject dispute is existent (see 9 U.S.C.A. § 4); the issue to be resolved does not concern "the merits of the controversy as to which arbitration is sought." (*Aberthaw Construction Co.* v. *Centre County Hospital* (M.D. Pa. 1973) 366 F.Supp. 513, 515 [affd. (3d Cir. 1974) 503 F.2d 1398].) ▮ The issue " 'should not be determined on affidavits, but rather a full trial should be had.' " (*A/S Custodia* v. *Lessin International, Inc.* (2d Cir. 1974) 503 F.2d 318, 320; *El Hoss Engineer. & Transport Co.* v. *American Ind. Oil Co.* (2d Cir. 1961) 289 F.2d 346, 351 [cert.den., 368 U.S. 837 (7 L.Ed.2d 38, 82 S.Ct. 51)].)

The Arbitration Act also expressly relates to petitions in "any United States district court . . . ." (See 9 U.S.C.A. § 4.) But it has now been widely held that the act is equally applicable to such proceedings brought in state courts arising out of transactions involving interstate commerce, or admiralty.

"The Federal Arbitration Act, declaring arbitration agreement affecting [interstate] commerce or maritime affairs to be valid, enforceable, and irrevocable, is a declaration of national law equally applicable in state or federal courts." (*REA Express* v. *Missouri Pacific Railroad Company* (Tex.Civ.App. 1969) 447 S.W.2d 721, 726; see also *Matter of Rederi (Dow Chem. Co.)* (1970) 25 N.Y.2d 576, 584 [307 N.Y.S.2d 660, 255 N.E.2d 224] [cert.den., 398 U.S. 939 (26 L.Ed.2d 272, 90 S.Ct. 1844)]; *Cooper* v. *Computer Credit Systems, Inc.* (1972) 40 App.Div.2d 692 [336 N.Y.S.2d 380, 381]; *Aerojet-General Corp.* v. *Non-Ferrous Metal Refin.* (1971) 37 App.Div.2d 531 [322 N.Y.S.2d 33, 34]; *Miller* v. *Puritan Fashions Corporation* (Tex.Civ.App. 1974) 516 S.W.2d 234, 238; *Mamlin* v. *Susan Thomas, Incorporated* (Tex.Civ.App. 1973) 490 S.W.2d 634, 637; *West Point-Pepperell, Inc.* v. *Multi-Line Indus., Inc.* (1973) 231 Ga. 329 [201 S.E.2d 452, 453]; *Pathman Const. Co.* v. *Knox County Hospital Ass'n* (1975) — Ind.App. — [326 N.E.2d 844, 851]; *Pinkis* v. *Network Cinema*

*Corporation* (1973) 9 Wn.App. 337 [512 P.2d 751, 755-756]; *Robert Lawrence Company* v. *Devonshire Fabrics, Inc.* (2d Cir. 1959) 271 F.2d 402, 404-407; *American Airlines, Inc.* v. *Louisville & Jefferson C.A.B.* (6th Civ. 1959) 269 F.2d 811, 815-816; *Litton FC, Inc.* v. *Pennsylvania Turnpike Commission* (E.D.Pa. 1974) 376 F.Supp. 579, 585-586 [affd. (3d Cir. 1975) 511 F.2d 1394]; *Aberthaw Construction Co.* v. *Centre County Hospital, supra,* 366 F.Supp. 513, 514-515.) We are advised of no contrary authority.

We find this authority compelling, and hold the Arbitration Act to be applicable to California's courts in the case of a contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. The proceedings below, as contended by defendants, were controlled by the Arbitration Act, and its authoritative interpretations.

II. We construe defendants' next appellate contention in this manner. They appear to concede that specific allegations and proof of fraud or undue influence in the inducement of an arbitration clause (as distinguished from the inducement of the contract in which it appears) would compel a determination of the clause's invalidity. But they argue that where as in the instant case, the allegations and proof relate to the inducement of the contract in which the arbitration clause is found, federal law requires that the issue of the contract's validity be arbitrated.

The leading case on the subject is undoubtedly *Moseley* v. *Electronic Facilities* (1963) 374 U.S. 167 [10 L.Ed.2d 818, 83 S.Ct. 1815]. Electronic Facilities sought a judicial decree that certain of its subcontracts with Moseley be arbitrated in accordance with provisions of the subcontracts. Moseley responded by attacking "not only the subcontracts, but also the arbitration clauses contained therein, as having been procured through fraud." The high court opined: "[I]t seems clear that the issue of fraud should first be adjudicated before the rights of the parties under the subcontracts can be determined. . . . If this issue is determined favorably to the petitioner [Moseley], there can be no arbitration under the subcontracts." (374 U.S., pp. 170-171 [10 L.Ed.2d, pp. 820-821].)

Another relevant high court decision is found in *Prima Paint* v. *Flood & Conklin* (1967) 388 U.S. 395 [18 L.Ed.2d 1270, 87 S.Ct. 1801]. There also, the parties' agreement contained a clause providing for arbitration of disputes. Prima Paint, in the United States District Court, sought rescission of the agreement "on the basis of . . . alleged fraudulent

inducement." It alleged only that it had been " 'fraudulently induced to accelerate the execution and closing date of the agreement herein, . . .' " No contention was made that the arbitration clause had been fraudulently induced. The *Prima Paint* court held (pp. 403-404 [18 L.Ed.2d, P. 1277]) that "consistent both with the decision in *Moseley* v. *Electronic Facilities* [*supra*] 374 U.S. 167, 171, 172 [83 S.Ct. 1815, 1817, 1818, 10 L.Ed.2d 818] (1963), and with the statutory scheme," "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it." Concluding that the claimed fraud did not affect the arbitration clause, but instead the inducement of the contract generally, i.e., the acceleration of its "execution and closing date," the court held that issue subject to arbitration, as had been agreed by the parties.

*Moseley* and *Prima Paint* have been consistently followed by other federal and state courts of review.

*Comprehensive Merch. Cat., Inc.* v. *Madison Sales Corp.* (7th Cir. 1975) 521 F.2d 1210, 1213: "[I]f the alleged fraud was part of a grand scheme that permeated the entire contract, including the arbitration provision, the arbitration provision should fall with the rest of the contract. (See *Moseley* v. *Electronic, etc., Facilities,* 374 U.S. 167, 83 S.Ct. 1815, 10 L.Ed.2d 818; *Housekeeper* v. *Lourie,* 39 A.D.2d 280, 333 N.Y.S.2d 932, *supra.*)"

*Robert Lawrence Co.* v. *Devonshire Fabrics, Inc., supra,* 271 F.2d 402, 411: Here the court was considering the Arbitration Act, and whether a contract was subject to arbitration thereunder. It said: "[T]his is not a case . . . where the defendant denied ever agreeing to anything. Naturally such a question had first to be settled before arbitration could be directed."

*Kulukundis Shipping Co.* v. *Amtorg Trading Corp.* (2d Cir. 1942) 126 F.2d 978, 986: "The Arbitration Act does not cover an arbitration agreement sufficiently broad to include a controversy as to the existence of the very contract which embodies the arbitration agreement. Section 2 of the Act . . . includes a 'provision in . . . a contract evidencing a transaction . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . .' Plainly such a provision does not

include a provision in a contract to arbitrate the issue whether the minds of the parties ever met so as to bring about the very contract of which that arbitration clause is a part; . . ."

*Matter of Weinrott (Carp)* (1973) 32 N.Y.2d 190, 197 [344 N.Y.S.2d 848, 298 N.E.2d 42]: "Of course, if the alleged fraud was part of a grand scheme that permeated the entire contract, including the arbitration provision, the arbitration provision should fall with the rest of the contract. (See *Moseley* v. *Electronics Facilities,* 374 U.S. 167 [83 S.Ct. 1815, 10 L.Ed.2d 818]; *Housekeeper* v. *Lourie,* 39 A.D.2d 280, *supra* [333 N.Y.S.2d 932].)"

*Housekeeper* v. *Lourie* (1972) 39 App.Div.2d 280 [333 N.Y.S.2d 932, 937-938]: "[I]t is clear that even fraud in the procurement of an arbitration contract itself, 'like fraud in the procurement of any contract, makes it void and unenforceable and that this question of fraud is a judicial one, which must be determined by a court. To allow this question to be decided by arbitrators would be to that extent to enforce the arbitration agreement even though steeped in the grossest kind of fraud' (Moseley v. Electronic & Missile Facilities (concurring op. of Black, J.), 374 U.S. 167, 172, 83 S.Ct. 1815, 1818, 10 L.Ed.2d 818). [¶] In the present case, the petitioners' allegations show fraud permeating the entire agreement of April 1, 1970. . . . If the allegations of the petitioners are true, then the entire agreement, including the provisions for arbitration, should be avoided as constituting a fraudulent breach of the fiduciary relationship between an attorney and his clients."

From all of the foregoing authority it becomes manifest that where it is alleged that fraud either induced the arbitration clause itself, or permeated the entire agreement including the arbitration clause, that issue will be determined judicially and not by arbitration.

III. We now consider whether or not plaintiff had alleged in the superior court that the claimed "fraud was part of a grand scheme that permeated the entire contract, including the arbitration provision" (see *Comprehensive Merch. Cat., Inc.* v. *Madison Sales Corp., supra,* 521 F.2d 1210, 1213), or that the basic contract "as well as the arbitration agreement [was] fraudulent" (see *Moseley* v. *Electronic Facilities, supra,* 374 U.S. 167, 169 [10 L.Ed.2d 818, 820]), or that she had never "agreed to anything" (see *Robert Lawrence Co.* v. *Devonshire Fabrics, Inc., supra,* 271 F.2d 402, 411). If such allegations are to be found, then the decision of the superior court must be affirmed.

Preliminarily, we comment upon the procedure followed by the parties at the superior court hearing. We observe that defendants invoked the procedures for enforcement of arbitration agreements provided for in California's Code of Civil Procedure. (§§ 1281.2, 1290 et seq.)[1] Pursuant to such procedure defendants filed a petition to compel arbitration. This petition alleged, in substance, that plaintiff entered in an agreement with defendant Merrill Lynch which, inter alia, provided for the arbitration of any controversy arising out of plaintiff's business or said agreement; a controversy has arisen under said agreement; that defendants are ready and willing to submit said controversy to arbitration pursuant to the terms of said agreement; and that plaintiff refuses and still refuses to submit the controversy to arbitration. Plaintiff did not file a response to the petition and therefore is deemed to have admitted the allegations of the petition. (§ 1290.) Plaintiff, however, filed a declaration in opposition to the petition to compel arbitration. That declaration substantially restated the allegations of plaintiff's complaint.

The hearing of defendants' petition to compel arbitration was duly noticed (see § 1290.4) and the petition came on for hearing. Section 1290.2 provides that such hearing shall be held in a summary way "in the manner and upon the notice provided by law for the making and hearing of motions, . . ."

It is apparent from the record below that the only issue tendered by the parties was a question of law, i.e., whether the allegations of the complaint raised the issue that fraud either induced the arbitration clause itself or permeated the entire agreement, including the arbitration clause, so as to require that the issue be determined judicially. The filing by plaintiff of a declaration did not tender an issue of fact because such a declaration was not required in view of the limited legal issue the court was called upon to determine. In any event, the allegations of the declaration which were a reiteration of the complaint were not controverted and the truth of its allegations must be deemed admitted for the purpose of determining the legal issue before the court.[2]

---

[1]Unless otherwise indicated all statutory references hereinafter made are to the Code of Civil Procedure.

[2]Plaintiff was apparently under the belief that because the California statute provides that a petition to compel arbitration is to be heard in a summary way in the manner of making and hearing motions and that because motions are commonly made and submitted on affidavits alone (see § 2009; *Haldane* v. *Haldane,* 210 Cal.App.2d 587, 593 [26 Cal.Rptr. 670]) that a declaration was necessary. We apprehend that an affidavit or declaration is necessary when factual issues are tendered in connection with a motion to compel arbitration. But here the court was not confronted with factual issues but with the legal issue above alluded to.

That the court below purported to determine only the legal issue above delineated is clear from its "Findings of Fact and Conclusions of Law." The court was apparently under the impression that it was required to make findings because section 1291 appears to require that findings be made.[3] █ Such findings and conclusions were not required in the instant case because the court was not called upon to determine factual issues but only a question of law. (See *Estate of Kearns,* 129 Cal.App.2d 832, 835 [278 P.2d 85]; *Wheeler* v. *Board of Medical Examiners,* 98 Cal.App. 267, 268 [276 P. 1119].) In any event what the court denominated "findings of fact" are not findings but conclusions of law to the effect that plaintiff's complaint alleges facts which, if true, would sustain a finding by a trier of fact that the arbitration clause was induced by fraud, undue influence and mistake. The "Findings of Fact" specifically state that the complaint alleges facts sufficient to raise the issues of fraud, undue influence, and mistake in the inducement of the arbitration agreement.[4]

---

[3]Section 1291 provides: "Findings of fact and conclusions of law shall be made by the court whenever an order or judgment, except a special order after final judgment, is made that is appealable under this title."

[4]The pertinent determination, denominated "findings of fact," is as follows:

"V

"The First Cause of Action of the Complaint herein alleges that in order to open·the account defendant Merrill Lynch, by and through defendant Jack Smith, caused plaintiff to execute certain documents. The Complaint further alleges that defendants concealed from plaintiff or misrepresented to plaintiff the true nature of those documents, which documents purported to grant authority to defendants to make securities purchases for plaintiff on margin and a clause of which purported also to require submission of all controversies between plaintiff and defendant to arbitration.

"VI

"The Complaint herein alleges facts sufficient·to raise the issue of fraud in the inducement of the arbitration clause between plaintiff Edith E. Main and defendant Merrill Lynch. The fraud as alleged in the Complaint not only induced the making of the principal agreement permitting defendants to make purchases for plaintiff on margin but also induced, and was directed toward, the making of the arbitration clause itself.

"VII

"The Complaint herein alleges facts sufficient to raise the issue of undue influence in the inducement of the arbitration agreement between plaintiff Edith E. Main and defendant Merrill Lynch. The undue influence as alleged in the Complaint not only induced the making of the principal agreement permitting defendants to make purchases for plaintiff on margin but also induced, and was directed toward, the making of the arbitration clause itself.

"VIII

"The Complaint herein alleges facts sufficient to raise the issue of mistake in the formation of the arbitration agreement between plaintiff Edith E. Main and defendant Merrill Lynch. The mistake in the formation of the arbitration agreement as alleged in the Complaint not only induced the making of the principal agreement permitting defendants to make purchases for plaintiff on margin but also induced, and was directed toward, the making of the arbitration clause itself."

We advert to the allegations of the complaint. They may reasonably be summarized as follows.

Plaintiff Edith Main was the conservator of her invalid husband's estate. Needing funds for living expenses she sold some stock through defendant Merrill Lynch. In the course of the transaction she met defendant Jack Smith, an "account executive" of Merrill Lynch. Jack Smith "represented to plaintiff that defendants, and each of them, could handle the financial affairs of the conservatorship and could provide her with proper investment counsel [sic] and advice . . . ." Plaintiff was impressed with "defendant Smith's sincerity and apparent expertise, . . ." Thereupon, "a most confidential relationship existed between the plaintiff and defendants and each of them. Plaintiff reposed the greatest confidence and trust in said defendants and consulted with defendants in her business affairs and believed that defendants would deal fairly and justly with plaintiff in all things. Plaintiff felt secure in seeking advice from and entrusting her business affairs to defendants."

During the course of this relationship "defendant Merrill Lynch, by and through defendant Smith, placed a lending agreement before plaintiff for her signature. Plaintiff was aged and unschooled in business affairs and did not know the true nature or content of the documents set before her. Although defendants knew of plaintiff's ignorance, nevertheless defendants induced plaintiff to sign the documents by misrepresenting the nature and content thereof to plaintiff. Defendants did not advise plaintiff that, by placing her signature on the document set before her and by placing the stock abovementioned in 'street name' with defendant, [they] could use said stocks as collateral for purchases of additional securities on margin. Further, defendants did not advise plaintiff that fine print 'boiler plate' provisions on the reverse side of the document purported to require submission of all controversies to arbitration. [¶] . . . Due to the confidential relationship above-mentioned, plaintiff was accustomed to signing documents at the request of defendants and had plaintiff known the true nature and content of the document set before her for her signature she would never have signed said document . . . ." Plaintiff "believed only that she was signing a document which effectuated the opening of the account with Merrill Lynch. . . . Plaintiff did not understand the intended effect of this fine print [requiring submission of all controversies to arbitration], and never agreed to submit all controversies to arbitration." It also appears that the "Lending Agreement" was

signed by plaintiff, during the course of a confidential, or fiduciary, or trust relationship with defendants.

Further observations are proper.

■ A confidential relationship "may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another." (*Estate of Cover* (1922) 188 Cal. 133, 143 [204 P. 583]; *O'Neil* v. *Spillane* (1975) 45 Cal.App.3d 147, 153 [119 Cal.Rptr. 245]; *Stevens* v. *Marco* (1956) 147 Cal.App.2d 357, 372 [305 P.2d 669].) And where the person in whom such confidence is reposed, by such confidence obtains any control over the affairs of the other, a trust or fiduciary relationship is created. (See Civ. Code, § 2219; *Vai* v. *Bank of America* (1961) 56 Cal.2d 329, 338 [15 Cal.Rptr. 71, 364 P.2d 247]; *Twomey* v. *Mitchum, Jones & Templeton, Inc.* (1968) 262 Cal.App.2d 690, 708 [69 Cal.Rptr. 222]; *Sime* v. *Malouf* (1949) 95 Cal.App.2d 82, 98 [212 P.2d 946, 213 P.2d 788].)

" 'When a fiduciary enters into a transaction with a beneficiary whereby the fiduciary's position is improved, or he obtains a favorable opportunity, or where he otherwise gains, benefits, or profits, it may fairly be said that an advantage has been obtained.' " (*Rader* v. *Thrasher* (1962) 57 Cal.2d 244, 250 [18 Cal.Rptr. 736, 368 P.2d 360]; *Bradner* v. *Vasquez* (1954) 43 Cal.2d 147, 152 [272 P.2d 11].)

A question before us is whether it may be inferred that defendants gained an advantage over plaintiff by inclusion, in the lending agreement, of the provision to arbitrate.

■ It is said on high authority that the right to select a judicial forum, vis-à-vis arbitration, is a " 'substantial right,' " not lightly to be deemed waived. (See *Wilko* v. *Swan* (1953) 346 U.S. 427, 438 [98 L.Ed. 168, 177, 74 S.Ct. 182]; *Boyd* v. *Grand Trunk W. R. Co.* (1949) 338 U.S. 263, 266 [94 L.Ed. 55, 58, 70 S.Ct. 26].) In a factual context somewhat similar to that before us, the federal Court of Appeals has decried the practice of securities dealers "using their superior bargaining position to require arbitration clauses in contracts with members of the investing public." (*Laupheimer* v. *McDonnell & Co., Inc.* (2d Cir. 1974) 500 F.2d 21, 26.) And it is notable that the defendants and plaintiff, respectively, of the instant proceeding treat the subject arbitration clause as an advantage to be held, and as a disadvantage to be invalidated.

We are, of course, aware of the law's policy to "recognize and give the utmost effect to arbitration agreements." (*Loscalzo* v. *Federal Mut. Ins. Co.* (1964) 228 Cal.App.2d 391, 398 [39 Cal.Rptr. 437]; and see *O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 490-491 [30 Cal.Rptr. 452, 381 P.2d 188].) But the policy does not extend to compelling arbitration where none was agreed. " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " (*Atkinson* v. *Sinclair Refining Co.* (1962) 370 U.S. 238, 241 [8 L.Ed.2d 462, 466, 82 S.Ct. 1318]; *United Concrete Pipe Corp.* v. *Laborers' Local No. 89* (1964) 231 Cal.App.2d 315, 318 [41 Cal.Rptr. 816].) Such agreements "are binding when they are openly and fairly entered into and when they accomplish the purpose for which they are intended." (*Player* v. *Geo. M. Brewster & Son, Inc.* (1971) 18 Cal.App.3d 526, 534 [96 Cal.Rptr. 149].)

■ It is the settled law of this state, and elsewhere, that " '[W]here there exists a relationship of trust and confidence it is the duty of one in whom the confidence is reposed to make full disclosure of all material facts within his knowledge relating to the transaction in question and any concealment of material facts is a fraud.' " (*Estate of Shay* (1925) 196 Cal. 355, 365 [237 P. 1079]; *Martin* v. *Martin* (1952) 110 Cal.App.2d 228, 233 [242 P.2d 688]; *Daily* v. *Superior Court* (1935) 4 Cal.App.2d 127, 131-132 [40 P.2d 936].) " 'Where there is [such] a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud sufficient to entitle the party injured thereby to an action.' " (*Stafford* v. *Schultz* (1954) 42 Cal.2d 767, 777 [270 P.2d 1]; *Pashley* v. *Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 235 [153 P.2d 325]; and see *Stevens* v. *Marco, supra,* 147 Cal.App.2d 357, 378; *Kruse* v. *Miller* (1956) 143 Cal.App.2d 656, 659-660 [300 P.2d 855, 61 A.L.R.2d 1231].)

Civil Code section 1573 states: "Constructive fraud consists: 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him; . . ."

"[T]his section states the rule applicable in confidential relations. . . . 'Constructive fraud . . . is presumed from the relation of the parties to a transaction, or the circumstances under which it takes place. . . . Constructive fraud often exists where the parties to a contract have a special confidential or fiduciary relation, which affords the power and

means to one to take undue advantage of, or exercise undue influence over, the other.' " (*Mary Pickford Co.* v. *Bayly Bros., Inc.* (1939) 12 Cal.2d 501, 525 [86 P.2d 102]; and see *Boyd* v. *Bevilacqua* (1966) 247 Cal.App.2d 272, 290 [55 Cal.Rptr. 610]; *Goodwin* v. *Wolpe* (1966) 240 Cal.App.2d 874, 878 [50 Cal.Rptr. 55]; *Crocker-Anglo Nat. Bank* v. *Kuchman* (1964) 224 Cal.App.2d 490, 494 [36 Cal.Rptr. 806].) And under such circumstances "undue influence" will also be inferred, or presumed. (See Civ. Code, § 2235; *Cox* v. *Schnerr* (1916) 172 Cal. 371, 378-379 [156 P. 509]; *Barney* v. *Fye* (1957) 156 Cal.App.2d 103, 106 [319 P.2d 29]; *Cullen* v. *Spremo* (1956) 142 Cal.App.2d 225, 231 [298 P.2d 579]; *Estate of Mallory* (1929) 99 Cal.App. 96, 102 [278 P. 488].)[5]

▮ The record thus demonstrates that the allegations of plaintiff's complaint sufficiently alleged fraud and undue influence, not only in the inducement of the entire lending agreement, but also in the inducement of its arbitration clause.

For the purpose of the hearing on their petition defendants, as has been pointed out, conceded the truth of the complaint's allegations. And the record demands an affirmative answer to the question here raised by them: "Do the allegations of the complaint raise the issue that grounds exist for revocation of the arbitration agreement . . . ?" There was accordingly no error in the superior court's order denying defendants' petition to compel arbitration. The trial court should now set the case for trial to determine the issues recognized in the order denying the petition to compel arbitration.

The order denying defendants' motion to compel arbitration is affirmed.

Sims, J., concurred.

---

[5]In the judicial determination whether the evidence supports a finding of fraud or undue influence in relation to a federal statute or proceeding, the law of the state in which it allegedly occurred applies where, as here, an act of Congress does not otherwise provide. (See 28 U.S.C.A. § 1652; *Erie R. Co.* v. *Tompkins* (1938) 304 U.S. 64 [82 L.Ed. 1188, 58 S.Ct. 817, 114 A.L.R. 1487]; *Woods* v. *National Life and Accident Insurance Company* (3d Cir. 1965) 347 F.2d 760, 768; *Garcia* v. *Bernabe* (1st Cir. 1961) 289 F.2d 690, 692; *Hanson* v. *Ford Motor Co.* (8th Cir. 1960) 278 F.2d 586, 590; *Gonterman* v. *Nicholas* (5th Cir. 1959) 270 F.2d 509, 511-512; *Madden* v. *Metropolitan Life Ins. Co.* (5th Cir. 1943) 138 F.2d 708, 709-710 [151 A.L.R. 984] [cert.den., 322 U.S. 730 (88 L.Ed. 1565, 64 S.Ct. 945)].)