Mary GUADANO and Robert
Guadano, Plaintiffs,

v.

LONG ISLAND PLASTIC SURGICAL
GROUP, P.C., Vincent DiGregorio,
M.D. and Nassau Hospital, Defendants.

No. CV 81–1892.

United States District Court,
E.D. New York.

April 23, 1982.

McCoy & Agoglia, P.C., Mineola, N.Y., for plaintiffs; Kathleen M. Beckett, Mineola, N.Y., of counsel.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendants Long Island Plastic Surgical Group, P.C. and Vincent DiGregorio, M.D., Peter Fleming, Jr., Martin Wendel, New York City, of counsel.

*Memorandum of Decision and Order*

MISHLER, District Judge.

This diversity action was commenced by plaintiffs Mary Guadano and her husband in June 1981. Plaintiffs seek damages for the alleged medical malpractice committed by defendant Dr. DiGregorio. Defendant Long Island Plastic Surgical Group, P.C. ("Surgical Group") and Dr. DiGregorio presently move for an order staying this action and compelling arbitration of this matter pursuant to the agreement of arbitration executed on May 21, 1979.

Based upon the undisputed facts in the record, we find that defendants are entitled to the requested relief since the arbitration agreement was openly and fairly entered into.

### FACTS

All of the pertinent facts concerning the professional relationship between defendants and Mrs. Guadano derive from defendants' affidavits in support of the instant motion.[1]

The beginning of the relationship between Dr. DiGregorio and Mrs. Guadano dates back to April 30, 1979 when her doctor examined her for elective cosmetic surgery.[2] After this initial examination and consultation with Mrs. Guadano's family physician, Dr. DiGregorio scheduled the patient for admission to Nassau Hospital on May 22, 1979.

It is uncontested that the arbitration agreement and consent form were mailed to plaintiff for her review on May 10, 1979, some eleven days prior to her next scheduled office visit. In pertinent part, the agreement recited the following language: "I understand that my doctor and his associates ... have adopted the procedure of arbitration to *resolve all claims and disputes* that may arise in the future out of our medical relationship except for claims of money due for services rendered." (emphasis added).

Dr. DiGregorio has no specific recollection of any discussions with Mrs. Guadano regarding the signing of the arbitration agreement. However, it has been the practice of the Surgical Group to adhere to certain rules and procedures in attending to the administrative task of procuring a patient's agreement to arbitrate. Mary Coley, a duly licensed registered nurse who was employed by the Surgical Group during May 1979, explained those practices and procedures.[3] Her sworn statements constitute admissible evidence of what Mrs. Guadano was advised prior to signing the arbitration agreement. Since plaintiffs have not responded, by affidavit or otherwise, that Mrs. Guadano was without the benefit of these practices and procedures, we find, based on the only evidence before us, the following:

1. Nurse Coley undertook to explain the arbitration agreement to Mrs. Guadano during her pre-operative visit to the Surgical Group on May 21, 1979;

---

1. Following oral argument on this motion, the court, *sua sponte,* afforded plaintiffs twenty (20) days leave by which they were to serve and file affidavits made on personal knowledge which would be sufficient to controvert any of the facts sworn to in the affidavits submitted by defendants. No such affidavits were forthcoming. On April 5, 1982, plaintiffs' counsel informed this court that plaintiffs would concede, for the purposes of this motion, the facts as stated in the affidavits submitted by defendants.

2. Based on the April 30 examination, Dr. DiGregorio concluded that plaintiff was a candidate for plastic surgery of the eyelids (a bilateral upper and lower lid blephoroplasty), an excision of the skin for the elimination of wrinkles (a rhytidectomy), and a tucking of the platelike muscle in the neck (a platysma plication). Each of these procedures were performed by Dr. DiGregorio in the latter part of May 1979.

3. Nurse Coley was the witness to the arbitration agreement entered into between the parties on May 21, 1979.

2. The arbitration agreement was sent to Mrs. Guadano prior to her pre-operative (May 21) visit and was accompanied with a cover letter which stated: Included in the papers that require your signature is a form consenting to the placement of any future difficulty arising between yourself, your surgeon and/or Long Island Plastic Surgical Group, P.C. into arbitration. We require your signature on this form as well as our signature for reasons that we feel benefit both parties.

By submitting any dispute to arbitration, through the American Arbitration Association, both parties have the dispute determined much more quickly than had the matter been brought to a Court of Law. Arbitration is a simplified, efficient procedure whereby both parties save a great deal of cost and time in settling any dispute. Arbitration does not take away anybody's right to raise a dispute and have it resolved. Any dispute that could be brought to Court can be brought to arbitration. It simply substitutes one type of form for another. Instead of going through the entire Court system and have a Judge and in most cases a jury determine the issues involved, arbitration is submitted to an impartial arbitrator who makes the decisions. This saves significant Court costs for both sides and has the potential of reducing fees to the individual and expert costs to the individual.

Arbitration is merely a more efficient and less time consuming process;

3. Nurse Coley advised Mrs. Guadano (a) that due to the increase in malpractice cases and the rise in insurance premiums, the Surgical Group felt it necessary to establish the policy of having the patient enter into binding arbitration, (b) that this policy was also attributable to mounting court costs as well as large jury awards in medical malpractice cases, (c) that the arbitration would be under the auspices of the American Arbitration Association and that the three arbitrators would be comprised of a lay person, a physician and an attorney, (d) that in agreeing to the arbitration process, she would not relinquish her right to a legal remedy for any wrongdoing which the doctor or his associates might commit but that she would be giving up her right to a trial by jury, (e) that the findings made by the American Arbitration Association were binding upon the parties, (f) that she could be represented by counsel at the arbitration procedure, and (g) that two booklets provided by the American Arbitration Association were available for her review; and

4. Nurse Coley suggested that Mrs. Guadano speak to Dr. DiGregorio if she had any objections to or questions concerning the arbitration agreement or was reluctant to sign it.

As previously stated, the foregoing evidence has not been challenged in any meaningful respect and therefore no hearing is required.

Dr. DiGregorio's statements concerning his general practice establish that he inquired of Mrs. Guadano whether she had any questions regarding the arbitration agreement. The doctor recalls neither Mrs. Guadano nor her husband, who was also present, asking any questions.[4]

The surgery performed on Mrs. Guadano "was elective, voluntary surgery" and was necessary for "cosmetic reasons" only. The success of the operation did not require that it be performed within any particular time frame. The operation could have been performed by any qualified plastic surgeon. Plaintiffs fail to allege any special circumstances (e.g., the parties had a prior relationship) which might indicate unequal bargaining power between Mrs. Guadano and Dr. DiGregorio.

**4.** As indicated in footnote 1, the court provided plaintiffs with ample opportunity to challenge the probative value of the general practices of the Surgical Group. By failing to submit an affidavit which denies that the Surgical Group's practices were adhered to in this case, plaintiffs have conceded, for the purposes of this motion, that such procedures in fact were performed.

In opposition to defendants' motion to stay this action and compel arbitration, plaintiffs make the following arguments: (i) the arbitration agreement is inherently inequitable since Mrs. Guadano was asked to relinquish her constitutional right to a jury trial without the assistance of counsel, (ii) Mrs. Guadano was not specifically advised by defendants that the arbitration agreement would encompass a claim for malpractice, (iii) the arbitration agreement constitutes a contract of adhesion because of the parties' unequal bargaining power, and (iv) the arbitration agreement should be rescinded on the grounds of mistake.

## DISCUSSION

■ Neither of the parties has referred us to a New York Court of Appeals case which treats the issues before us in the context of a doctor-patient relationship, nor has our research uncovered such authority. Accordingly, it is our task to determine the law of New York from the perspective of the highest court of the state. *See e.g., Roginsky v. Richardson-Merrell, Inc.,* 378 F.2d 832, 851 (2d Cir.1967); *Harem-Christensen Corp. v. M.S. Frigo Harmony,* 477 F.Supp. 694, 697 (S.D.N.Y.1979).

■ We reject plaintiffs' first argument out of hand. It was not incumbent upon defendants to urge or even to advise Mrs. Guadano to seek the assistance of counsel before she contracted to relinquish her right to a jury trial. Defendants fairly advised Mrs. Guadano concerning the nature of the arbitration process. The cover letter which accompanied the arbitration agreement explained that decisions concerning disputes covered by the agreement would be made by an impartial arbitrator instead of either a judge or a jury. Nurse Coley indicated that defendants' desire for arbitration was in part attributable to large jury awards in medical malpractice cases. She reiterated what was stated in the cover letter—that Mrs. Guadano would forfeit her right to a jury trial under the arbitration agreement. We note that Mrs. Guadano makes no allegations, either in her pleadings or elsewhere, that she failed to understand any of the implications which would ensue from the election of the arbitration process.

■ Plaintiffs propose a rule that encourages the advice of counsel in every instance where a contract includes an arbitration clause. Where, as here, the nature of an arbitration was fairly explained, we can conceive of no reason to adopt plaintiffs' position. Moreover, given the high cost of obtaining legal services, the proposed rule appears inconsistent with New York State's public policy which favors arbitration, in part, due to its virtue of conserving financial resources of the contracting parties. *See e.g., Mobil Oil Indonesia, Inc. v. Asamera Oil (Indonesia) Ltd.* 43 N.Y.2d 276, 281–82, 401 N.Y.S.2d 186, 188, 372 N.E.2d 21, 23 (1977); *Matter of Maye,* 40 N.Y.2d 113, 117–18, 386 N.Y.S.2d 69, 72, 351 N.E.2d 717, 720 (1976); *see also* McLaughlin, *Practice Commentaries,* McKinney's Sections C7501:4–6 (1980).

■ Plaintiffs next seek to set aside the arbitration agreement because defendants failed to advise Mrs. Guadano that the arbitration clause encompassed claims for medical malpractice. Plaintiffs appear to claim that the arbitration clause itself was induced by fraud which, if proven, would provide a defense to arbitration. *Housekeeper v. Lourie,* 39 A.D.2d 280, 333 N.Y. S.2d 932 (1st Dep't.1972). The facts do not support the claim.

Mrs. Guadano submitted no affidavit which would tend to establish her ignorance concerning the scope of the arbitration agreement. Furthermore, Nurse Coley's explanation of the advantages of arbitration from the standpoint of the Surgical Group sufficiently apprised Mrs. Guadano of this fact even if the broad language of the clause did not. Defendants did not deceive Mrs. Guadano in any respect concerning the scope of the arbitration agreement. The uncontradicted evidence before the court requires the conclusion that the agreement was entered into openly.

■ The previously stated facts also require us to reject plaintiffs' claim of mis-

take. *See Restatement (Second) of Contracts* § 20 (1981). Mrs. Guadano had reason to know of the meaning defendants attached to the arbitration agreement. On the other hand, in light of Nurse Coley's general practice, defendants had no reason to believe Mrs. Guadano might believe that the all encompassing arbitration clause would exclude malpractice claims.

Finally, the facts of this case do not support the contention that the arbitration agreement is unconscionable. The consequences of the arbitration agreement were explained to Mrs. Guadano. Mrs. Guadano failed to assert any special need, either actual or perceived, to have Dr. DiGregorio or any of his associates at the Surgical Group perform the operation. In the face of Dr. DiGregorio's contrary assertions contained in his affidavit, plaintiffs simply fail to make out a case that the arbitration clause is unconscionable. *Restatement (Second) of Contracts* § 208 (1981).

Defendants' request for an order staying this action and compelling arbitration of the issues raised in the complaint is granted, and it is

SO ORDERED.