[No. E006574. Fourth Dist., Div. Two. Aug. 27, 1990.]

LINDA STROTZ, Plaintiff and Respondent, v.
DEAN WITTER REYNOLDS, INC., et al., Defendants and
Appellants.

## COUNSEL

Jones, Bell, Simpson & Abbott, Michael J. Abbott and Donald C. Miller for Defendants and Appellants.

Covington & Crowe, Robert F. Schauer, Melanie Fisch and Wayne K. Baldwin for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—Defendants Dean Witter Reynolds, Inc. (Dean Witter) and Craig Nelson (Nelson) appeal from an order denying their petition to compel arbitration. The trial court denied arbitration because of plaintiff's allegations in her complaint that defendants had fraudulently induced her to sign the contract which contained the agreement to arbitrate and that the fraud permeated the entire contract, including the agreement to arbitrate.

I

 FACTS[1]

In October of 1985, plaintiff went to the Dean Witter office in Upland and met with Nelson for the purpose of transferring her investment account

[1] Under the federal Arbitration Act, the parties are entitled to a jury trial of the issue whether a valid agreement to arbitrate exists. (9 U.S.C. § 4.) "The issue, ' "should not be determined on affidavits, but rather a full trial should be had." ' " (*Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19, 24 [136 Cal.Rptr. 378].) Accordingly, in ruling on a petition to compel arbitration, the court should merely determine whether plaintiff has alleged sufficient facts of fraud directed at the making of the arbitration agreement to warrant a trial on the issue of the validity of the agreement.

The facts are taken from the plaintiff's original and first amended complaints as supplemented by the facts set forth in the declarations submitted by the parties in connection with the petition to compel arbitration.

from the Dean Witter office in Costa Mesa which had managed her investments since 1979. At the time of the transfer, Nelson had plaintiff sign a "Customer's Agreement" and an "Option Client Information" agreement. Both contracts include agreements to arbitrate any controversy arising out of or related to the contract. Additionally both contracts state that all terms of the agreement shall be included in any subsequent agreement. Plaintiff signed a second "Option Client Information" agreement in 1987 which contained the same terms. In 1988, plaintiff filed suit when she learned defendants had lost her $180,000 investment, contending that defendants had misrepresented the nature of the OEX index options in which she had invested by stating they were a low risk investment when in fact they were high risk, had concealed the full extent of her losses and had sold her stock to cover her losses.

When defendants demanded arbitration under the two contracts signed in 1985, plaintiff filed a first amended complaint wherein she alleged that at the time she signed the contracts in 1985, defendants told her that the contracts simply were documents necessary to open her account, that they did not affect her legal rights and that it was not necessary to read them. She contends she was not given the opportunity to read the documents and was not advised of the agreement to arbitrate. Additionally, she alleges she was not told that the document entitled "Option Client Information" was actually a contract, the terms of which were set forth on the back of the form. Finally, plaintiff contends she did not know the true nature and effect of the documents and that had she known she would not have signed them.[2]

Defendants filed their petition to compel arbitration wherein they alleged that both the contracts signed in 1985 and the "Option Client Information" contract signed in 1987 required plaintiff to submit her claims to arbitration. In opposition to the petition to compel arbitration, plaintiff filed a declaration which in essence repeated the allegations in the complaint. She also filed a supplemental declaration in which she stated that from time to time after she opened her account with defendants, she received documents or form letters from defendants. When she received such documents, she would call defendants and ask what the documents were. Each time, defendants would tell her that it was okay to sign the documents, that it wasn't necessary to keep copies and not to worry. She further stated that she signed such documents on defendants' assurances that they were simply standard documents defendants required. The 1987 "Option Client Infor-

[2] Plaintiff also alleges she was not informed the option agreement gave defendants the right to sell her stock to cover the losses and continues her allegations of fraud and misrepresentation about the nature of the investment in OEX index options.

mation" agreement was among the documents defendants told her were standard forms defendants required.

## II

### PERMEATION DOCTRINE

In this case we are called upon to determine whether the federal Arbitration Act (9 U.S.C. § 1 et seq.) allows a party to avoid an agreement to arbitrate by use of what has been referred to by the parties as the "permeation doctrine." While the parties argue its applicability, they have not attempted to explain or define the doctrine. But then we find that the courts which have applied the permeation doctrine provide little guidance in its proper application as well. Therein lies the problem. Because the parameters of the doctrine have not been clearly defined in relation to the United States Supreme Court rule of severability under the federal Arbitration Act, we decline to rely on it. Nonetheless, as we explain, we find the trial court properly denied the petition to compel arbitration.

■ The federal Arbitration Act provides that, in contracts involving interstate commerce, a written arbitration agreement is valid and enforceable.[3] Accordingly, a trial court is required to order a matter to arbitration unless there are grounds for revocation of the arbitration agreement. Prior to 1967, the circuit courts of appeals had been divided on the issue of whether claims of fraud in the inducement of a contract which contained an agreement to arbitrate were subject to arbitration or were to be decided by the trial court. Some courts held as a matter of federal substantive law that the arbitration agreement was severable from the principal contract and therefore claims of fraud in the inducement of the principal contract did not invalidate the arbitration agreement. Others held that the issue of severability was to be determined under the applicable state law.

In *Prima Paint* v. *Flood & Conklin* (1967) 388 U.S. 395 [18 L.Ed.2d 1270, 87 S.Ct. 1801], the United States Supreme Court resolved this conflict and held that, as a matter of federal substantive law, an arbitration clause in a contract is severable from the principal contract in which it is located. Therefore, claims of fraud or other defenses which may vitiate the principal contract do not affect the agreement to arbitrate. Accordingly, in ruling on a petition to compel arbitration or an application for a stay of court pro-

---

[3] The parties concede that this matter is governed by the federal Arbitration Act as it involves securities transactions in interstate commerce. (*Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra*, 67 Cal. App.3d 19.)

ceedings pending arbitration, the trial "court may consider only issues relating to the making and the performance of the agreement to arbitrate" and may not "consider claims of fraud in the inducement of the contract generally."[4] (*Id.*, at p. 404 [18 L.Ed.2d at p. 1277].) These principles were later determined to apply to any contract governed by the federal Arbitration Act whether the issue is raised in state or federal courts. (*Southland Corp.* v. *Keating* (1984) 465 U.S. 1, 12 [79 L.Ed.2d 1, 13, 104 S.Ct. 852]; *Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1, 24-25 [74 L.Ed.2d 765, 785-786, 103 S.Ct. 927].)

In *Prima Paint*, the plaintiff alleged that it had been induced to enter a contract containing an arbitration agreement by the defendants' false representations and fraud regarding its ability to perform the contract. The court held that this fraud did not relate to the making or the performance of the agreement to arbitrate. As there was no evidence the parties intended to withhold legal issues regarding the validity of the contract from arbitration and no evidence the plaintiff was fraudulently induced to agree to arbitration, the fraud issue was to be decided by the arbitrator.[5]

Although *Prima Paint* is clear in its directive that the trial court may decide only issues of fraud directed at the making and the performance of the arbitration agreement, the courts which have applied the permeation doctrine actually have relied more on an earlier Supreme Court decision in *Moseley* v. *Electronic Facilities* (1963) 374 U.S. 167 [10 L.Ed.2d 818, 83 S.Ct. 1815], rather than *Prima Paint*. In *Moseley*, two subcontractors filed an action in Georgia and sought, in addition to other relief, an injunction enjoining the prime contractor from proceeding with its arbitration efforts in New York, contending that the Miller Act (40 U.S.C. §§ 270a-270d) gave the subcontractors the right to sue in the district court where the subcontracts were performed. The Supreme Court did not decide that issue, stating that before the issue of the arbitrability of the disputes under the subcontracts could be reached, the district court must first decide the issue of fraud. In *Moseley*, the subcontractors alleged "that the subcontracts . . . were a fraudulent scheme to obtain a great amount of work and material

---

[4] If the court determines the arbitration agreement is valid, it must then decide what issues are to be decided by the arbitrator. This issue is determined by reference to the language of the agreement itself. Here, as in *Prima Paint*, the parties' agreement includes "any controversy arising out of or related to the contract." Under the *Prima Paint* holding, this language is broad enough to include a claim of fraud in the inducement of the contract.

[5] In a dissenting opinion joined in by Justices Douglas and Stewart, Justice Black strongly criticized the severability rule as being inconsistent with the legislative history of the Arbitration Act. Black also argued the rule was inconsistent with the parties' intentions. "Prima would not have agreed to . . . the arbitration clause but for F & C's fraudulent promise . . . ." (388 U.S. at p. 424 [18 L.Ed.2d at p. 1288].)

from petitioner and the other subcontractors without making payment therefor and to 'browbeat' petitioner and his fellow subcontractors into accepting much less than the value of their claims. One of the means used to effect such scheme was alleged to be the insertion in the subcontracts of an arbitration clause requiring arbitration of disputes in New York." (*Id.*, at p. 171 [10 L.Ed.2d at p. 821].) In finding "that the issue of fraud should first be adjudicated before the rights of the parties under the subcontracts can be determined," the court emphasized, *"that, as alleged here, the issue goes to the arbitration clause itself, since it is contended that it was to be used to effect the fraudulent scheme."* (*Ibid.*, italics supplied.) The court later held that *Moseley* and *Prima Paint* were consistent. (*Prima Paint* v. *Flood & Conklin, supra*, 388 U.S. 395, 404, fn. 12 [10 L.Ed.2d 1270, 1277-1278].)

Thus, when *Moseley* and *Prima Paint* are read together, they hold that, under a broadly worded arbitration provision, fraud in the making or performance of a principal contract is to be decided by the arbitrator. The issue of fraud is to be decided by the court only where it is alleged the arbitration agreement itself was obtained by fraud or is part of a fraudulent scheme. It is not sufficient to allege simply that the arbitration agreement is located in a contract which was otherwise procured by fraud.

The "permeation doctrine" apparently was originated in an appellate division of a New York trial court, applying New York law, in *Housekeeper* v. *Lourie* (1972) 39 A.D.2d 280 [333 N.Y.S.2d 932], appeal dismissed 32 N.Y.2d 832 [345 N.Y.S.2d 1018, 299 N.E.2d 261]. In that case, the allegation was that the petitioners had been induced to enter the agreement to terminate a partnership by their attorney's (respondent's) representation that the contract was the only form by which the partnership could be terminated and that if they did not sign the agreement, the partnership would continue. The contract contained an arbitration provision. In finding that the issue of fraud should be decided by the court and not an arbitrator, the court stated, "[i]n the present case, the petitioners' allegations show fraud *permeating* the entire agreement of April 1, 1970. It may not be held as a matter of law that this agreement resulted from 'arm's length negotiations' rendering applicable an assumption that, notwithstanding the alleged fraud, the dominant intention of the parties was to settle their disputes by arbitration. [Citations.] If the allegations of the petitioners are true, then the entire agreement, including the provisions for arbitration, should be avoided as constituting a fraudulent breach of the fiduciary relationship between an attorney and his clients." (333 N.Y.S.2d at p. 938, italics supplied.)

The court in *Housekeeper* was addressing a contract governed by New York law which did not involve the federal Arbitration Act. California

courts, however, subsequently applied the permeation doctrine to cases arising under the federal Arbitration Act. In *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra*, 67 Cal.App.3d 19 and in *Ford* v. *Shearson Lehman American Express, Inc.* (1986) 180 Cal.App.3d 1011 [225 Cal.Rptr. 895], the courts held that a petition to compel arbitration under the federal Arbitration Act is properly denied "where it is alleged that fraud either induced the arbitration clause itself, or permeated the entire agreement including the arbitration clause . . . ." (*Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra*, 67 Cal.App.3d 19, 27.) The court in *Ford* did not independently analyze the question of whether the permeation doctrine is applicable under the federal Arbitration Act but relied on *Main* for this proposition and the *Main* court relied almost exclusively on *Housekeeper* and *Moseley*.[6] The *Moseley* decision does not support the permeation doctrine because, as noted, the court in that case expressly found that the fraud was directed at the arbitration clause. Thus the sole support for the permeation doctrine appears to be the *Housekeeper* decision which as we previously mentioned was applying state law and therefore is not authority for the doctrine under the federal Arbitration Act.

We also do not believe the *Housekeeper* decision can be construed to be consistent with *Prima Paint*'s rule of severability as there were no allegations of fraud directed at the arbitration clause. There was no allegation, for example, that the plaintiffs were led to believe they had to agree to arbitration or that the arbitration agreement was part of a fraudulent scheme or that the parties never intended to agree to arbitration. In fact, there is no explanation of how or why the fraud "permeated" the contract. In our reading of the *Housekeeper* decision, it appears the court found the arbitration agreement invalid merely because it was contained within a contract which was otherwise obtained by fraud. If this is a correct interpretation, then it is inconsistent with *Prima Paint*'s rule of severability and cannot be applied under the federal Arbitration Act.

In *Main*, the court elaborated on the permeation doctrine and affirmed the order denying the petition to compel arbitration not merely because the agreement to arbitrate was contained in a contract which was otherwise procured by fraud but because that inclusion of the arbitration agreement itself constituted constructive fraud. The court found that defendants "gained an advantage over plaintiff by inclusion, in the lending agreement, of the provision to arbitrate." (*Main* v. *Merrill Lynch, Pierce, Fenner &*

---

[6]The other cases relied upon by the court in *Main* do not aid in the analysis of the permeation doctrine as they either did not apply or discuss the permeation doctrine and were decided long before *Prima Paint* or merely quoted language from the *Housekeeper* decision in dicta. We do not discuss these cases.

*Smith, Inc., supra,* 67 Cal.App.3d 19, 31.) In reaching this conclusion, the court relied on the fact that (1) the right to select a judicial forum is a substantial right not lightly to be deemed waived; (2) a federal court had criticized the practice of securities dealers of requiring arbitration clauses; and (3) the parties in *Main,* respectively, treated the arbitration clause as an advantage to be held and a disadvantage to be invalidated. In our opinion, these factors do not support the court's conclusion.

First, whatever the law may be regarding *unilateral waiver* of the right to select a judicial forum, it is not instructive in the context of a bilateral agreement to arbitrate. Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other. Both parties give up the same rights and thus neither gains an advantage over the other.[7]

Second, that one court has criticized the practice of including arbitration clauses in standardized contracts is not a basis for ignoring an agreement to arbitrate. Arbitration has received increasing support in the courts as a recognized means of resolving disputes more efficiently and more economically. (*Pacific Inv. Co.* v. *Townsend* (1976) 58 Cal.App.3d 1, 9-10 [129 Cal.Rptr. 489].) In the context of adhesion contracts, the courts have held that the inclusion of an arbitration provision is not per se unconscionable, particularly in a commercial transaction. (*Izzi* v. *Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1318 [231 Cal.Rptr. 315].)

Finally, the fact that one party later seeks to avoid the agreement to arbitrate cannot alone preclude enforcement of the agreement. If that were sufficient, few arbitration agreements would be enforceable.

In *Ford* v. *Shearson Lehman American Express, Inc., supra,* 180 Cal.App.3d 1011, the court not only approved of and applied the permeation doctrine, but further held that *Prima Paint* was not applicable. The *Ford* court distinguished *Main* and *Moseley* from *Prima Paint* on the

---

[7] We acknowledge that there may be arbitration provisions which do give an advantage to one party. The provision in the *Moseley* case requiring arbitration in New York for a dispute in Georgia is illustrative of an unfair arbitration agreement. Similarly, courts are less inclined to uphold a provision for arbitration before a presumptively biased arbitrator. In those cases, however, it is not the requirement of arbitration alone which makes the provision unfair but rather the place or manner in which the arbitration is to occur. Here the arbitration agreement does not favor either party as it allows the customer to elect whether the arbitration is to be governed by rules of the Arbitration Committee of the Chamber of Commerce of the State of New York, the American Arbitration Association or the Board of Arbitration of the New York Stock Exchange.

grounds that the former cases involved allegations of fraud in the *making* of the contract while *Prima Paint* involved fraud in the *performance* of the contract. (*Id.*, at p. 1022.) Accordingly, the court in *Ford* held that fraud in the making of the contract should be decided by the court while the issue of fraud in the performance is for the arbitrator to decide. (*Id.*, at p. 1023.) We disagree with the distinction the *Ford* court made as it ignores the rule in *Prima Paint* that the arbitration agreement is severable from the principal contract.

The Supreme Court in *Prima Paint* did not hold that fraud which goes to the making of the contract is for the court and fraud related to the performance of the contract is for the arbitrator. Rather, the court specifically and expressly made a distinction between fraud which is directed at the arbitration agreement and fraud directed at the principal contract. The court quite clearly held that only fraud directed at the making or performance of the arbitration agreement is to be determined by the court. (*Prima Paint* v. *Flood & Conklin, supra*, 388 U.S. 395, 403-404 [18 L.Ed.2d 1270, 1277-1278].)

Although we disagree with the analysis in both *Main* and *Ford* and find no support under federal law for the permeation doctrine, we nonetheless find that the result in the *Main* and *Ford* cases as well as in the present case is correct on the alternative theory applied in the *Ford* opinion. In *Ford*, the plaintiff alleged that at the time he signed the agreements, he was under the complete dominion and control of one of the defendants and that if he in fact signed the agreements he did not know what they were and did not know what their effect was. (*Ford* v. *Shearson Lehman American Express, Inc., supra*, 180 Cal.App.3d 1011, 1025-1026.) Based on these facts, the court in *Ford* also found that the complaint sufficiently alleged fraud in the inception, factum or execution to render the agreement to arbitrate void for lack of mutual assent. (*Id.*, at p. 1028.) " 'If the fraud goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and it is *void* . . . . [Citation.]' " (*Ibid.*)

We agree that if a party is unaware he is signing any contract, obviously he also is unaware he is agreeing to arbitration. Accordingly, an allegation of fraud in the inception or execution of the contract is necessarily directed at both the principal contract and the arbitration agreement contained

therein.[8] In such a situation it cannot be seriously contended that the party knew he was signing one contract but did not know he was agreeing to another agreement when the two agreements are contained in the same document.

The claim of fraud in the inception or execution is analogous to the claim that an agent lacked authority to sign an agreement discussed in *Kulukundis Shipping Co.* v. *Amtorg Trading Corp.* (2d Cir. 1942) 126 F.2d 978. In that case, the court properly held that the question of the agent's authority to sign a contract which contained an arbitration agreement was for the court. If the agent did not have the authority to sign the contract, the agent necessarily did not have the authority to agree to arbitration. To compel the principal to arbitrate would have meant the principal was bound by an arbitration agreement he denied making. Further, had the arbitrator determined the agent lacked the authority to sign the contract, the arbitrator necessarily would have determined that agent also lacked authority to agree to arbitration. With this determination, the arbitrator's decision would in turn be a nullity.

The alternate theory in *Ford* as well as the *Kulukundis* case is also consistent with *Moseley*. Had the court, in *Moseley*, referred the issue of fraud to arbitration in New York pursuant to the arbitration agreement, the court would have been assisting the defendant in its fraudulent scheme. A determination by the arbitrator that the arbitration agreement was, as the plaintiffs contended, a means to effect the fraud would have been of little value to the subcontractors who already would have incurred the time and expense of arbitrating their dispute in New York.

■ *Accordingly, we hold that allegations of fraud in the inception or execution of a contract which contains an agreement to arbitrate are sufficient to place the issue of fraud before the court and to deny a petition to compel arbitration.* Here the plaintiff has alleged that defendants deceived her as to the nature and effect of the documents she was signing and that had she known the documents contained an agreement to arbitrate, she would not have signed the documents. Plaintiff's failure to read the docu-

---

[8] Similarly, the result in *Main* can be explained and upheld under this theory. In that case as well, the plaintiff had alleged a fiduciary relationship with the defendant and that because of the trust and confidence she had in defendant she was accustomed to signing documents at the defendant's request without reading the documents. (*Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc., supra*, 67 Cal.App.3d 19, 30.) She further alleged that she did not know the true nature and effect of the documents she was signing, that defendant misrepresented the nature and content of the documents in order to induce plaintiff to sign them, and that plaintiff believed she was only signing documents necessary to open an account and would not have signed them if she knew their contents. (*Ibid.*)

ments may be excusable in light of allegations of a fiduciary relationship and defendants' misrepresentations. (See 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 407, pp. 366-367.) If the court decides the issue of fraud in the execution of the documents in favor of plaintiff, litigation should proceed in court on the remaining issues, including the fraudulent representations about the index options. If, however, the court finds no fraud in the execution of the documents, plaintiff will be bound by the agreement to arbitrate and the court should enter an order compelling arbitration. (*Ford* v. *Shearson Lehman American Express, Inc., supra*, 180 Cal.App.3d 1011, 1029.)

## III

### THE 1987 CONTRACT

Defendants also contend that since plaintiff has not set forth in her amended complaint any allegations of fraud directed at the "Option Client Information" contract signed in 1987, then, even if there was fraud in connection with the first two contracts, the court erred in denying arbitration under the third contract.[9] While it is true that the fraud alleged in the amended complaint refers only to the two contracts signed in 1985, plaintiff, in her supplemental declaration in opposition to the petition to compel arbitration, did allege that during the course of her relationship with defendants, defendants sent a number of documents requesting her signature. Each time, according to plaintiff, defendants advised her that these were simply standard forms required for her account and there was nothing to worry about. She also stated in her declaration that she signed these documents in reliance on defendants' assurances that these were merely standard forms.[10] In light of the allegations of a confidential relationship existing between plaintiff and defendants at the time this contract was signed, whether it was reasonable for plaintiff to rely on defendants' assurances is a question of fact. At this time, we simply find that as is true with the other

---

[9] Plaintiff's failure to allege fraud in connection with this third contract is understandable. When defendants first demanded arbitration in their counsel's letter dated October 19, 1988, reference was made to only the two contracts signed in 1985, copies of which were attached to the letter. Defendants did not demand arbitration pursuant to the third contract until they filed their petition to compel arbitration which was after plaintiff's first amended complaint was filed.

[10] Defendants did not object to the trial court's consideration of this supplemental declaration and certainly did not contend the trial court was limited to the allegations of fraud set forth in the complaint. Thus any error in the trial court's consideration of this supplemental declaration was waived. We note, however, that neither the federal Arbitration Act nor our comparable state procedure for a petition to compel arbitration (Code Civ. Proc., §§ 1281-1281.8) specifically requires that the grounds for invalidating an arbitration agreement be contained in a complaint or alternatively, that they be set forth in declarations in opposition to the petition.

contracts, plaintiff has alleged sufficient facts of fraud in the execution of the *third contract to warrant denial of defendants' petition to compel arbitration at this time.*

## IV

## DISPOSITION

The order denying defendants' petition to compel arbitration is affirmed. All parties to bear their own respective costs on appeal.

Timlin, J., and McDaniel, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied November 14, 1990. Panelli, J., was of the opinion that the petition should be granted.

---

* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.