[Nos. A065480, A066554. First Dist., Div. One. Aug. 4, 1995.]

HAYES CHILDREN LEASING COMPANY et al., Plaintiffs and Respondents, v.
NCR CORPORATION et al., Defendants and Appellants.

## COUNSEL

Perez & McNabb, Richard L. Perez and Jeffrey Alan Miller for Defendants and Appellants.

Crosby, Heafey, Roach & May, Ezra Hendon, Scott D. Baker, Carla J. Shapreau and Vickie L. Henry for Plaintiffs and Respondents.

## OPINION

**STEIN, J.**—This is an appeal from an order denying a motion to compel arbitration.

### FACTUAL AND PROCEDURAL BACKGROUND

In October 1993, respondents Hayes Children Leasing Company (hereafter, Hayes Leasing) and Automatic Rain Company, Inc. (hereafter, Automatic Rain) filed an action against NCR Corporation and several of its employees, Gregory Peck, Jean Claude Littee and M. Ted Senemar (hereafter, unless otherwise indicated, all defendants will be referred to as NCR). The complaint alleged that Hayes Leasing and Automatic Rain, collectively, had entered into an agreement (the Universal Agreement) with NCR to purchase and/or lease a computer system for use by Automatic Rain to manage its business. It was further alleged, in essence, that NCR had falsely represented the capabilities and quality of the system, which false representations had induced Hayes Leasing and Automatic Rain to enter into the contract. Numerous problems later arose with respect to the performance of the system and with the services provided by NCR. NCR failed to disclose that other customers were having similar problems with like systems, instead asserting that the problems were the fault of Hayes Leasing and Automatic Rain. Hayes Leasing and Automatic Rain therefore incurred various costs in attempting to make the system function, including hiring additional employees and purchasing additional equipment, upgrades and services. The complaint sought damages, profits and restitution, plus costs and attorney fees,

on theories of fraudulent and negligent misrepresentation, fraudulent concealment, breach of contract, breach of warranty, unlawful tying (Bus. & Prof. Code, §§ 16720, 16727) and unfair competition (Bus. & Prof. Code, § 17200 et seq.). It did not, however, seek relief in the form of rescission of the contract, relief appropriate to a claim that the contract was fraudulently induced. (Civ. Code, § 1566.)

NCR answered the complaint, but thereafter moved to compel arbitration of the claims, citing paragraph 19 of the Universal Agreement: "19. DISPUTES—Any controversy or claim, including any claim of misrepresentation, arising out of or related to this Agreement and/or any contract hereafter entered into between NCR and Customer, or the breach thereof, or the furnishing of any equipment or service by NCR to Customer, shall be settled by arbitration. The arbitration shall be conducted by a single arbitrator under the then current rules of the American Arbitration Association. The arbitrator shall be chosen from a panel of persons knowledgeable in business information and data processing systems. The decision and award of the arbitrator shall be final and binding and the award so rendered may be entered in any court having jurisdiction thereof. The arbitration shall be held and the award shall be deemed to be made in the city where the NCR district office procuring the order is located."

Hayes Leasing and Automatic Rain opposed the motion to compel arbitration, and at the same time moved to amend their complaint. Their attorney asserted that after filing the original complaint she learned that Automatic Rain had not in fact signed the Universal Agreement and was never intended to be a party to it. Rather, Hayes Leasing executed the agreement on its own behalf and later subleased the system to Automatic Rain. Counsel further claimed that she had discovered certain documents "that give rise to the claim that agreement to the arbitration clause contained in NCR's 'Universal Agreement' at issue was induced by fraud." Counsel further declared, somewhat inconsistently, "The remaining allegations which plaintiffs seek to add to the Complaint were inadvertently and mistakenly omitted upon the original filing and are necessary to fully and accurately set forth plaintiffs' claims."

The proposed amended complaint accordingly included the allegation that NCR had listed Automatic Rain as a "customer" on the Universal Agreement by mistake, and that when the mistake was pointed out to it, NCR asked Willard L. Hayes (who was authorized to enter into the agreement on behalf of Hayes Leasing) to sign the agreement anyway, representing that the clerical error would be corrected. Willard Hayes did sign the Universal Agreement, and NCR later substituted Hayes Leasing's name for Automatic

Rain in the agreement. The proposed amended complaint also contained the following new allegation: "In addition, Defendants fraudulently procured from Hayes Leasing signed Universal Agreements and Product and Services Sale and/or Rental Order Records which contained and/or incorporated an arbitration provision. The arbitration provision is part and parcel of Defendants' overall scheme to defraud Hayes Leasing, and other consumers, by intentionally selling and/or leasing a defective Computer System while simultaneously intending to use the arbitration provision as a means to deprive Hayes Leasing, and other consumers, of necessary discovery for a fair resolution of their claims."

The trial court granted the motion to amend the complaint. It denied the motion to compel arbitration as to Automatic Rain on the grounds that Automatic Rain was not a party to the agreement at issue and thus had not agreed to arbitrate any issue. It denied the motion to compel arbitration as to Hayes Leasing without prejudice, ruling that it might be renewed after resolution of the question of whether the arbitration clause had been fraudulently induced. It further found that the "word 'misrepresentation' which may involve non-intentional actions, does not necessarily include intentional fraud." In so ruling the court apparently accepted the argument of Hayes Leasing that the term "misrepresentation" is ambiguous and does not provide notice that a customer would be required to arbitrate potential claims of intentional fraud or concealment. NCR appealed from that order. NCR subsequently moved to compel arbitration of the parties' dispute as set forth in the amended complaint.[1] The court denied the motion for the same reasons it denied NCR's first motion, and NCR also appeals from that order. The appeals have been consolidated here.

We will reverse the orders as to Hayes Leasing, but affirm as to Automatic Rain.

I.

*The Trial Court Erred in Holding That There Should Be a Judicial
Determination of the Validity of the Agreement to Arbitrate*

There is no allegation that in signing the Universal Agreement Hayes Leasing was unaware that it had entered into a contractual agreement. There is no allegation that Hayes Leasing was unaware that as part of the

---

[1]NCR stated its belief that the trial proceedings should be stayed until this court determined the validity of the order denying the motion to compel arbitration. It filed a second motion to compel arbitration only because Hayes Leasing and Automatic Rain pressed on with their suit.

contract it agreed to resolve through arbitration any controversy or claim, including any claim of misrepresentation, arising out of or related to the agreement or the furnishing of equipment or service by NCR. There is no allegation that Hayes Leasing entered into the Universal Agreement or agreed to the arbitration clause only because of the coercion of a fiduciary or of someone having significantly stronger bargaining power. There is no allegation that Hayes Leasing was unaware of the limitations of the arbitration process. Finally, there is no allegation that NCR in any way misrepresented its own intention to abide by the agreement to arbitrate in order to induce Hayes Leasing to make a like promise. We conclude that absent some such allegation the validity of the arbitration clause is not in issue, and the court below incorrectly concluded that a judicial determination of the validity of the clause was necessary.

Hayes Leasing recognizes that the general rule is that mere allegations that the contract as a whole was induced by fraud will not avoid the effect of an arbitration clause (*Prima Paint* v. *Flood & Conklin* (1967) 388 U.S. 395 [18 L.Ed.2d 1270, 87 S.Ct. 1801]), but argues that the present case falls under an exception to the general rule recognized in *Moseley* v. *Electronic Facilities* (1963) 374 U.S. 167 [10 L.Ed.2d 818, 83 S.Ct. 1815]. *Moseley,* at least arguably, stands for the proposition that an allegation that an arbitration clause is inserted into a contract as part of a fraudulent scheme raises an issue of the validity of the arbitration clause which then must be resolved by a court. *Moseley,* however, was decided by the United States Supreme Court before *Prima Paint,* and its holding, therefore, is overruled or limited to the extent it is inconsistent with the principles of law stated in the later case. Upon our review of *Prima Paint,* and other relevant authorities, we conclude it is not enough to allege that the arbitration clause was inserted to further a fraudulent scheme. The question in all cases simply is whether the agreement to arbitrate itself was induced by some fraud. Ordinarily this means that there must be facts alleged from which it might be concluded that the party resisting arbitration never intended to agree to arbitrate the issues raised in the proceedings, or that its assent to the agreement to arbitrate was the product of wrongful coercion. Absent such an allegation it must be concluded that the parties agreed to arbitrate their differences, including issues of fraud in the inducement of the contract, and the matter should be referred to the arbitrators without any preliminary judicial consideration of the question of fraud in the inducement.

■ The contract at issue involves interstate commerce and thus is governed by the provisions of the Federal Arbitration Act, title 9, United States Code section 1 et seq. (hereafter FAA). (See *J. Alexander Securities, Inc.* v. *Mendez* (1993) 17 Cal.App.4th 1083, 1090 [21 Cal.Rptr.2d 826]; and see

*Rowland* v. *PaineWebber Inc.* (1992) 4 Cal.App.4th 279, 284 [6 Cal.Rptr.2d 20], and *Tonetti* v. *Shirley* (1985) 173 Cal.App.3d 1144, 1148 [219 Cal.Rptr. 616].) The FAA reflects a national policy favoring arbitration. (*Southland Corp.* v. *Keating* (1984) 465 U.S. 1, 11 [79 L.Ed.2d 1, 12, 104 S.Ct. 852].) Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." (*Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1, 24-25 [74 L.Ed.2d 765, 785, 103 S.Ct. 927].) Although the question here is one of federal law, we note that California has embraced the policy favoring arbitration as a speedy and relatively inexpensive means of dispute resolution. (*Ericksen, Arbuthnot, McCarthy, Kearny & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 322 [197 Cal.Rptr. 581, 673 P.2d 251].) It follows that it should not lightly be concluded that preliminary issues—including the issue of the validity of an arbitration clause—should be determined by the court, rather than by an arbitrator. Thus the court in *Ericksen* stated: "California courts have observed in other contexts the dangers inherent in committing preliminary issues to the courts. 'If participants in the arbitral process begin to assert all possible legal or procedural defenses in court proceedings before the arbitration itself can go forward, the "arbitral wheels would very soon grind to a halt." ' [Citation.] Referring preliminary issues to the courts can ' "cause serious delay and confusion, thus robbing the arbitration procedure of much of its value to the parties." ' [Citation.] And, we have recently warned against 'procedural gamesmanship' aimed at undermining the advantages of arbitration." (35 Cal.3d at pp. 323.)

 Section 2 of the FAA provides that a written provision for arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." There is no question but that fraud in the inducement of a contract provides grounds for its revocation. The court in *Prima Paint,* however, held that a contractual agreement to arbitrate may not be defeated by allegations that the contract as a *whole* was fraudulently induced. It held, rather, that except where the parties otherwise intend, the question of the validity of an arbitration provision should be determined separately from the validity of the contract as a whole. This is because the parties' agreement to arbitrate ordinarily reflects an intent to have the arbitrators determine all claims between the parties, including any claim that the contract itself was induced by fraud. It follows that mere allegations of fraud as having induced the contract as a whole do not raise the issue that the agreement to arbitrate, although contained in that contract, is invalid. (388 U.S. at pp. 402-404 [18 L.Ed.2d at pp. 1276-1278].) But ". . . if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making of the agreement to arbitrate—the . . . court may proceed to adjudicate it." (388 U.S. at pp. 403-404 [18

L.Ed.2d at p. 1277].) In adopting the same approach, the court in *Ericksen* explained, "The scope of arbitration is, of course, a matter of agreement between the parties, and if they choose to limit that scope so as to exclude questions of fraud in the inducement of the contract that choice must be respected. In this state, as under federal law [citation], doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. [Citations.] Therefore, in the absence of indication of contrary intent, and where the arbitration clause is reasonably susceptible of such an interpretation, claims of fraud in the inducement of the contract (as distinguished from claims of fraud directed to the arbitration clause itself) will be deemed subject to arbitration." (35 Cal.3d at p. 323.)[2]

■ It becomes necessary to determine when a party's allegations *do* attack the validity of the agreement to arbitrate. The recent case of *Lynch* v. *Cruttenden & Co.* (1993) 18 Cal.App.4th 802 [22 Cal.Rptr.2d 636] presents a straightforward example. The complaint alleged facts from which it might be concluded that the defendants occupied a fiduciary relationship with the plaintiffs, and that the plaintiffs reasonably relied on the defendants' misrepresentations that the contracts at issue were mere formalities and would not affect their rights. Contrary to these representations, arbitration clauses in the contracts *did* affect the plaintiffs' rights in that, if enforced, they would deprive the plaintiffs of the right to obtain a judicial determination of their claims. The court found that the representations of the defendants that the contract would have no effect on the plaintiffs' rights "is in direct conflict with the existence of an arbitration clause." (*Id.* at p. 810.) It therefore concluded that ". . . the making of the agreement for arbitration is in issue and the court has no power to order arbitration under section 4 of the Federal Arbitration Act." (*Ibid.*)

In *Lynch*, there were allegations that there had been no voluntary assent to the agreement to arbitrate, whether or not there was voluntary assent to the contract as a whole. In many, if not most cases, however, the finding that the plaintiff had no intention to agree to arbitrate results from the finding that the plaintiff had no intention to enter into *any* kind of a contractual agreement. In such a situation, identified as "fraud in the inception," the preliminary determination of intent to arbitrate requires resolution of the question

---

[2]In *Prima Paint* the intent to arbitrate was not affected by allegations that the plaintiff had been fraudulently induced to enter into the contract because of false representations that the defendant was solvent and able to perform its contractual obligations. In *Ericksen*, similarly, allegations that the plaintiff was entitled to rescind a lease agreement because of the defendant's false representations that the premises were in a tenantable condition, did not in any way indicate a lack of intent to arbitrate. The courts in those cases thus found that the allegations of fraud in the inducement of the contract as a whole could not affect the validity of the arbitration clauses.

of intent to contract at all. The issue of fraud in the inception, therefore is raised when it is alleged that there was no intent to contract; it is not necessary to allege, specifically, that there was no intent to arbitrate. As explained by the court in *Rice* v. *Dean Witter Reynolds, Inc.* (1991) 235 Cal.App.3d 1016, 1024 [1 Cal.Rptr.2d 265]: "The 'fraud in the inception' theory is consistent with *Prima Paint* because it assumes that the party seeking to avoid arbitration did not enter into *any* contract, and thus did not assent to the arbitration clause."

Some courts also have found that the validity of the agreement to arbitrate is in issue when the allegations support a finding that fraud "permeated" the entire transaction, including the arbitration clause. (*Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19, 27 [136 Cal.Rptr. 378].) The "permeation doctrine" has been criticized as being inconsistent with *Prima Paint* in that it does not require that there be allegations of fraud directed at the arbitration clause itself. (*Strotz* v. *Dean Witter Reynolds, Inc.* (1990) 223 Cal.App.3d 208, 214 [272 Cal.Rptr. 680].) As discussed above we do not agree that *Prima Paint* requires allegations directed specifically and solely at the agreement to arbitrate. *Prima Paint*, rather, requires some allegation from which it may be determined that the parties in fact did not intend to arbitrate the issues set forth in the pleadings. The allegation may be directed solely at the "making" of the agreement to arbitrate or, as recognized by the doctrine of fraud in the inception, it may be directed at the "making" of the contract as a whole. We do agree, however, that the permeation doctrine is inconsistent with *Prima Paint* to the extent it indicates that an agreement to arbitrate may be found invalid simply because the contract as a whole was induced by fraud.

Some courts have resolved the seeming conflict between *Prima Paint* and the permeation doctrine by finding the doctrine identical to the doctrine of fraud in the inception. (See *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc., supra,* 35 Cal.3d at p. 323, fn. 8; cf. *Rice* v. *Dean Witter Reynolds, Inc., supra,* 235 Cal.App.3d 1016, 1023.) It may be that the permeation doctrine should be viewed as a recognition that there are ways of alleging fraud in the making of an agreement in addition to allegations that a party was unaware that the document it signed was a contract or contained a promise to arbitrate. Such a party may have signed the agreement under duress, or because of undue influence or through wrongful coercion. In *Ericksen*, for example, the court, while finding that the permeation doctrine did not apply because it was not a case in which the party resisting arbitration denied ever agreeing to anything (35 Cal.3d at p. 323, fn. 8), also held at page 322, footnote 7: "Where an arbitration clause is part of a contract of adhesion, courts will carefully scrutinize the agreement to assure

that the arbitration provisions fall within the reasonable expectations of the weaker, or 'adhering' party, and are not unduly oppressive or 'unconscionable.' " (And see *Pacific Gas & Electric Co.* v. *Superior Court* (1993) 15 Cal.App.4th 576, 597-598 [19 Cal.Rptr.2d 295].) In *Ford* v. *Shearson Lehman American Express, Inc.* (1986) 180 Cal.App.3d 1011 [225 Cal.Rptr. 895], the court found that the order denying a motion to compel arbitration was proper, in part, because of allegations that the claimant's signature on the documents had been obtained while he was under the domination of the defendants.[3] Indeed, many of the other cases requiring judicial scrutiny of an arbitration clause contain elements of wrongful coercion or undue influence. The viability or extent of the permeation doctrine need not detain us. For our purposes, the important thing is that after *Prima Paint*, the doctrine may not be interpreted as permitting judicial determination of the validity of an agreement to arbitrate on the grounds that the contract, including the arbitration clause, was induced by fraud. As we read *Prima Paint*, whatever fraud is alleged had to specifically and unquestionably infect the agreement to arbitrate such that it nullifies the apparent consent to *that* agreement.

 Turning again to the allegations of Hayes Leasing, those allegations are only (1) that the arbitration clause was part of an overall fraudulent scheme to sell defective equipment, and (2) that NCR intended to use the arbitration clause as a means to deprive Hayes Leasing of necessary discovery. The allegation that NCR acted fraudulently in selling defective equipment is nothing more than an allegation of fraud in the inducement of the contract as a whole. Such an allegation can have no effect on the validity of the arbitration clause. The allegation that NCR intended to use the arbitration clause as a means to restrict discovery means nothing more than that NCR intended to follow ordinary arbitration procedures.[4] We see nothing in such allegation from which it might be determined that Hayes Leasing never freely and voluntarily assented to the arbitration process.

---

[3]The court in *Ericksen*, as noted, treated the permeation doctrine as the same as the doctrine of fraud in the inception, but nonetheless found that an agreement to arbitrate might fall because it is unconscionable. The court in *Ford*, while distinguishing between the permeation doctrine and a claim of involuntary agreement, tended to treat them as one and the same in its discussion of the allegations, finding that the permeation doctrine applied because the complaint alleged a scheme of "domination, control, concealment, misrepresentation and advantage gained by virtue" of a fiduciary relationship. (180 Cal.App.3d at p. 1027.)

[4]Although we need not decide the issue, we are far from convinced that arbitration of this matter will deprive Hayes Leasing of necessary discovery. The court in *Arnold* v. *Arnold Corp.* (6th Cir. 1990) 920 F.2d 1269 found unpersuasive a similar argument, holding: "In the arbitration of a dispute under the Rules of The American Arbitration Association, the arbitrators may issue subpoenas for the attendance of witnesses and for the production of books, records, documents and other evidence, and they have the power to administer oaths. On application of a party and for use as evidence, the arbitrators may permit a deposition to be taken, in the manner and upon the terms designated by the arbitrators, of a witness who cannot be subpoenaed or is unable to attend the hearing. All provisions of law compelling a person under subpoena to testify are applicable. If the arbitrator were to deny Arnold access

It still must be determined if the decision in *Moseley* v. *Electronic Facilities, supra,* 374 U.S. 167 affects the conclusion that the allegations here raise no issue of the validity of the arbitration clause. In *Moseley,* the plaintiff subcontractors brought an action against the prime contractor under a contract with the United States Corps of Engineers in Savannah, Georgia. The contracts were performed in Georgia and the complaint was brought under the provisions of the Miller Act, which, among other things provides that any suits shall be litigated in the district where the contract was to be performed. The defendant sought to compel arbitration in New York under a clause in the contract requiring all claims to be submitted to arbitration in New York City and to be determined by New York law. In opposing the motion the plaintiffs attacked the subcontracts, as well as the arbitration agreement, as being fraudulent. The circuit court had held that in order to bar arbitration the allegation of fraud had to be directed to the arbitration clause rather than to the entire contract. The Supreme Court held that the allegations of fraud were sufficiently directed to the arbitration clause, and that the issue of validity of the arbitration clauses therefore should be judicially determined. "In essence, petitioner alleges that the subcontracts with him . . . were a fraudulent scheme to obtain a great amount of work and material from petitioner and the other subcontractors without making payment therefor and to 'browbeat' petitioner and his fellow subcontractors into accepting much less than the value of their claims. One of the means used to effect such scheme was alleged to be the insertion in the subcontracts of an arbitration clause requiring arbitration of disputes in New York. . . . [I]t seems clear that the issue of fraud should first be adjudicated before the rights of the parties under the subcontracts can be determined. . . . In considering the question of the sufficiency of the pleadings with reference to the allegations of fraud, we believe that, as alleged here, the issue goes to the arbitration clause itself, since it is contended that it was to be used to effect the fraudulent scheme. If this issue is determined favorably to the petitioner, there can be no arbitration under the subcontracts." (374 U.S. at p. 171 [10 L.Ed.2d at p. 821].)

The court in *Prima Paint* held that its conclusion that a judicial determination of the validity of an agreement to arbitrate is required only when there

to the necessary records or persons to prove his claim and he were to lose, the judgment in favor of Arnold Corp. could be vacated under Section 10(d) of the Federal Arbitration Act, which permits a federal court to vacate an award where the arbitrators 'so imperfectly executed [their powers] that a mutual, final and definite award upon the subject matter submitted was not made.' Thus the arbitral forum is not one in which appellant is denied the opportunity to pursue his claims. We do not believe that amendment of the complaint to include a charge that the arbitration clause was intended to effect a larger fraudulent scheme by limiting discovery is sufficient to constitute a 'well-founded claim' that the arbitration clause itself, standing apart from the agreement as a whole, was induced by fraud." (*Id.* at p. 1279.)

are allegations going to the " 'making' " of the agreement to arbitrate, is consistent with *Moseley.* (388 U.S. at pp. 403-404, including fn. 12 [18 L.Ed.2d at pp. 1277-1278].) *Moseley,* like *Prima Paint,* held that the allegations at issue had to be directed at the validity of the arbitration clause itself, as opposed to an allegation that the entire contract was itself invalid. *Prima Paint,* however, does not adopt the finding in *Moseley* that an arbitration clause may be struck down because it is alleged that a party intended to use the clause as one method of effecting fraud. Instead, in rejecting the argument that the allegations raised an issue as to the validity of the arbitration clause, the court in *Prima Paint* held, ". . . no claim is made that Prima Paint ever intended that 'legal' issues relating to the contract be excluded from arbitration, or that it was not entirely free so to contract." (388 U.S. at p. 406 [18 L.Ed.2d at p. 1279].) We read this finding as implicitly overruling *Moseley* to the extent the court in the earlier case found that an agreement to arbitrate might be found to be invalid because a party intended to use the arbitration clause in order to effect a fraudulent scheme. Under *Prima Paint,* once again, the question is whether the intent to arbitrate was given, and given freely. That an agreement to arbitrate means that discovery will be limited—or even that the arbitration would occur in an inconvenient forum —is irrelevant absent some reason to believe that the complaining party did not freely agree to so limit discovery, or to litigate in the inconvenient forum.[5]

## II.

### *The Issues Fall Within the Provisions of the Arbitration Clause*

Having concluded that Hayes Leasing's allegations raise no issue as to the validity of the agreement to arbitrate, we turn to the scope of the clause. Hayes Leasing, of course, can be compelled to arbitrate only such issues as it in fact agreed to arbitrate. (*Luster* v. *Collins* (1993) 15 Cal.App.4th 1338, 1346 [19 Cal.Rptr.2d 215]; *American Home Assurance*

[5]The court in *Arnold* v. *Arnold Corp., supra,* 920 F.2d 1269 was similarly troubled by the inconsistencies between *Moseley* and *Prima Paint.* It attempted to resolve them, in part, by finding that it was implied in *Moseley* "that the arbitration clause was inserted into the contract through superior bargaining power in order to deprive the subcontractors of their day in court by forcing them into a contractual forum that would be gravely difficult and inconvenient." (920 F.2d at pp. 1280-1281, fn. 9.) The *Arnold* court then noted, "[t]he Supreme Court has subsequently stated: [¶] A party resisting arbitration of course may attack directly the validity of the agreement to arbitrate. Moreover, the party may attempt to make a showing that would warrant setting aside the forum-selection clause—that the agreement was '[a]ffected by fraud, undue influence, or overweening bargaining power'; that 'enforcement would be unreasonable and unjust'; or that proceedings 'in the contractual forum would be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court.' " (*Ibid.*)

*Co.* v. *Benowitz* (1991) 234 Cal.App.3d 192, 200 [285 Cal.Rptr. 626].) Any ambiguity in the scope of the arbitration, however, will be resolved in favor of arbitration. (*Ibid.*) The arbitration clause in the present case is quite broad. By agreeing to the clause, Hayes Leasing agreed to arbitrate "[*a*]*ny controversy or claim,* including any claim of misrepresentation, *arising out of or related to* this Agreement and/or any contract hereafter entered into between NCR and Customer, or the breach thereof, or the furnishing of any equipment or service by NCR to Customer." (Italics added.) Hayes Leasing contends that the clause does not reflect an intent to arbitrate issues of fraud. Hayes Leasing, however, specifically agreed both to arbitrate *any* controversy or claim arising from or related to the contract, and in particular, to arbitrate issues of misrepresentation. As fraud is nothing more than one form of actionable misrepresentation (see Civ. Code, § 1709), the promise to arbitrate issues of misrepresentation was broad enough to encompass claims of fraud even if the clause limited arbitration to issues of misrepresentation. We recognize that another court has found that the arbitration clause in NCR's Universal Agreement was not broad enough to cover claims of fraud in the inducement; i.e., fraudulent misrepresentations occurring before the parties entered into the contract. (See *NCR Credit Corp.* v. *Park Rapids Leasing* (Minn.Ct.App. 1984) 349 N.W.2d 867, 868.) That the parties agreed to arbitrate misrepresentations *related* to the contract, we think, includes the intent to arbitrate misrepresentations which may have induced the agreement. It is appropriate here to repeat a quote from *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc., supra,* 35 Cal.3d at page 323: "The scope of arbitration is, of course, a matter of agreement between the parties, and if they choose to limit that scope so as to exclude questions of fraud in the inducement of the contract that choice must be respected. In this state, as under federal law [citation], doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. [Citations.] Therefore, in the absence of indication of contrary intent, and where the arbitration clause is reasonably susceptible of such an interpretation, claims of fraud in the inducement of the contract . . . will be deemed subject to arbitration." (35 Cal.3d at p. 323.) It follows that even if we found the arbitration clause to be ambiguous, we would be compelled to resolve that ambiguity in favor of finding that the claims at issue are subject to arbitration.

III.

*The Agreement of NCR and Hayes Leasing to Arbitrate Is Not Binding on Automatic Rain*

Automatic Rain can be compelled to arbitrate only if Automatic Rain agreed to arbitrate. NCR's position was that Automatic Rain was bound by a

1979 agreement and by the agreement at issue here, executed in 1987. Both agreements contained the arbitration clause set forth above and, at least in theory, bound the parties to arbitrate any controversy arising from, or related to, the agreement at issue, and "any contract hereafter entered into between NCR and Customer." Automatic Rain introduced evidence that it did not in fact enter into the 1987 agreement. Rather, Willard Hayes, the president of Automatic Rain, declared that Hayes Leasing was purchasing the equipment. Although Eleanor Hayes was the general manager of Hayes Leasing and the only person authorized to sign contracts on behalf of Hayes Leasing, she apparently authorized Willard Hayes to enter into the NCR contract on behalf of Hayes Leasing. NCR, however, presented Willard Hayes with the form Universal Agreement mistakenly listing Automatic Rain as the purchaser. Willard Hayes called the error to NCR's attention. At NCR's direction, he signed the form agreement notwithstanding the clerical error so that the order would be initiated. NCR then forwarded a corrected version of the agreement naming Hayes Leasing as the customer, and Willard Hayes signed it, again with Eleanor Hayes's authorization. Hayes Leasing then leased the equipment to Automatic Rain. NCR offered no evidence to dispute Automatic Rain's claim that its name on the form agreement was the result of clerical error. NCR contended, rather, that Automatic Rain's argument went to the validity of the contract as a whole and therefore could not be asserted as a basis for avoiding arbitration. The trial court rejected the argument that it was not entitled to decide the issue of clerical error, and resolved it in favor of Automatic Rain. It therefore found not only that Automatic Rain was not bound by the 1987 agreement, but that because Automatic Rain did not enter into that contract, it was irrelevant that Automatic Rain had promised in 1979 to arbitrate any controversies arising from any contract thereafter entered into by NCR and Automatic Rain.

Under the law discussed above, Automatic Rain's claim of mistake is a claim of fraud in the inception as Automatic Rain was claiming that it did not intend to be bound by the 1987 contract *at all*. It follows that, unlike the validity of the arbitration clause as to Hayes Leasing, the validity of the clause as to Automatic Rain was in issue and required judicial determination. The court correctly considered the matter and, on uncontested evidence, resolved the issue against NCR. We will not disturb the court's findings here. We accordingly also reject NCR's claim that Automatic Rain was bound by another provision of the 1987 agreement that "all equipment, programs, and services hereafter obtained from NCR, either directly or indirectly through the use of a leasing company" are subject to the agreement. As Automatic Rain is not bound by the 1987 agreement it is not bound by that provision.

NCR argues that Automatic Rain should be compelled to arbitrate because it was the ultimate user of the equipment. In so arguing it cites *Harris* v.

*Superior Court* (1986) 188 Cal.App.3d 475 [233 Cal.Rptr. 186] finding that a third party beneficiary to a contract is bound by the terms of the contract, including an arbitration clause contained therein. The court's theory, in part, was that because the third party could enforce the arbitration clause against a signatory to the contract, the signatory ought to be able to enforce the arbitration clause against the third party. It has not been established that Automatic Rain is a third party beneficiary to the 1987 contract or that it seeks to recover from NCR on such a theory or that Automatic Rain as a lessee of the equipment could compel NCR to arbitrate any controversy. All that has been established is that Hayes Leasing purchased or leased the equipment from NCR and later subleased it to Automatic Rain. Civil Code section 1559 defines a third party beneficiary contract as a contract made expressly for the benefit of a third person. Even if NCR is entitled to raise the issue of third party beneficiary for the first time on appeal, and, as the issue involves questions of fact it is not (see *Henry* v. *Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 100-101 [284 Cal.Rptr. 255] and *Lorber Industries of Cal.* v. *Los Angeles Printworks* (9th Cir. 1986) 803 F.2d 523, 525), NCR has cited us to no evidence disclosing that the contract at issue was made expressly for Automatic Rain's benefit. Indeed, the corrected Universal Agreement does not mention Automatic Rain.

The orders denying the motions to compel arbitration are affirmed as to Automatic Rain and reversed as to Hayes Leasing. Each party is ordered to bear its own costs on appeal.

Newsom, Acting P. J., and Dossee, J., concurred.

A petition for a rehearing was denied August 28, 1995, and appellants' petition for review by the Supreme Court was denied November 15, 1995.